## COMMISSIONERS *v.* SELLEW.

A county in Kansas is a body politic, whose powers are exercised by a board of county commissioners, and when it is sued, process must be served upon the clerk of the board.   Where, therefore, a *mandamus* was awarded against it, — *Held,* 1. That the writ was properly directed to it in its corporate name. 2. That service of a copy of the writ upon the clerk is service upon the corporation, and the members of the board who fail to perform the required act are subject to be punished for contempt.

ERROR to the Circuit Court of the United States for the District of Kansas.

The facts are stated in the opinion of the court.

*Mr. Matt. H. Carpenter* for the plaintiff in error.

*Mr. E. Stillings, Mr. L. B. Wheat,* and *Mr. T. A. Hurd, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

In the State of Kansas counties are bodies corporate and politic, capable of suing and being sued.   Their powers are exercised by boards of county commissioners chosen by the electors. The name by which they can sue or be sued is the " Board of County Commissioners of the County of ——."   In legal proceedings against a county, process is served on the clerk of the board.   1 Dassler's Kans. Stat. 217–221, sects. 1, 3, 5, 6, 9.

The boards of county commissioners are authorized " to apportion and order the levying of taxes as provided by law " (1 id. 224, sect. 16, sub. 4), and they are required to meet on

the first Monday in August of each year to "estimate and determine the amount of money to be raised by tax for all county purposes, and all other taxes they may be required by law to levy." 2 id. 1024, sect. 83.

Whenever a judgment is rendered against the board of county commissioners of a county, no execution shall issue, but the judgment "shall be levied and collected by tax, as other county charges, and, when so collected, shall be paid by the county treasurer to the person to whom the same shall be adjudged, upon the delivery of the proper voucher therefor." 1 id. 221, sect. 8.

By an act of the legislature of the State, approved Feb. 10, 1865, and proceedings thereunder, the board of county commissioners of the county of Leavenworth were authorized to subscribe to the capital stock of the Leavenworth and Missouri Pacific Railroad Company, and to issue bonds in payment of the subscription. Under this authority a subscription was made and bonds issued, bearing date July 1, 1865, and falling due July 1, 1875.

On the 29th of November, 1875, Sellew, the defendant in error, recovered judgment in the Circuit Court of the United States for the District of Kansas against the board of county commissioners of the county of Leavenworth upon part of the bonds so issued for $19,923.40 and costs of suit. On the 9th of October, 1877, he made known to the court, by affidavit, that on the 6th of August previous he had demanded of the board of county commissioners that they should levy a tax to pay his judgment, and that they had failed to do so. He then obtained from the court an alternative *mandamus* directed to the board of county commissioners, and to John S. Van Winkle, Ebenezer W. Lucas, and William S. Richards, individual members of the board, directing that they levy the tax immediately, or show cause, on the 26th of November, 1877, why it had not been done. Copies of this writ were in due form served on the clerk of the board and upon each of the individual members. On the return-day the board, appearing for the purpose of the motion only, moved to quash the alternative writ because it did not state facts sufficient to authorize the issue of a peremptory writ, and the several individual members answered, stating

that the board met on the first Monday in August, 1877, and estimated and determined the amount of money to be raised by taxation for all purposes for the year 1877 ; that having completed their labor, they adjourned *sine die ;* that in due time afterwards the tax lists were made out, and on the 1st of November put in the hands of the treasurer for collection ; that a part of the taxes so levied and collected had already been paid ; that the judgment mentioned in the alternative writ was not rendered on any of the kinds of indebtedness mentioned in the proviso of sect. 1, c. 90, of the Session Laws of 1876 ; and that on the 6th of November, at the general election of county officers, Van Winkle and Lucas were not re-elected as members of the board, but that other persons were elected in their places, and that by reason thereof they would not be members of the board after their present term expired.

Chapter 90 of the Session Laws of 1876 was an act relating to taxation in Leavenworth County, and did not specially authorize a levy of taxes to pay this judgment, but it declared that no more taxes than were therein provided for should be levied.

On the 6th of December, 1877, a peremptory writ of *mandamus* was ordered " to and against the board of county commissioners of the county of Leavenworth, . . . commanding it to levy, on or before the first Monday in the month of August next, and collect at the same time and in the same manner that general taxes are levied and collected, . . . a tax on all taxable property . . . in said county of Leavenworth . . sufficient in amount to pay the judgment," &c.

To reverse this judgment this writ of error has been sued out.

In *United States* v. *Boutwell* (17 Wall. 604), it was decided that as a *mandamus* was used " to compel the performance of a duty resting upon the person to whom the writ is sent," if directed to a public officer, it abated on his death or his retirement from office, because it could not reach the office. That principle does not, as we think, apply to this case. There the officer proceeded against was the Secretary of the Treasury of the United States, and the writ was "aimed exclusively against him as a person." Here the writ is sent against the board of

county commissioners, a corporation created and organized for the express purpose of performing the duty, among others, which the relator seeks to have enforced. The alternative writ was directed both to the board in its corporate capacity and to the individual members by name, but the peremptory writ was ordered against the corporation alone. As the corporation can only act through its agents, the courts will operate upon the agents through the corporation. When a copy of the writ which has been ordered is served upon the clerk of the board, it will be served on the corporation, and be equivalent to a command that the persons who may be members of the board shall do what is required. If the members fail to obey, those guilty of disobedience may, if necessary, be punished for the contempt. Although the command is in form to the board, it may be enforced against those through whom alone it can be obeyed. One of the objects in creating such corporations, capable of suing and being sued, and having perpetual succession, is that the very inconvenience which manifested itself in Boutwell's case may be avoided. In this way the office can be reached and the officer compelled to perform its duties, no matter what changes are made in the agents by whom the officer acts. The board is in effect the officer, and the members of the board are but the agents who perform its duties. While the board is proceeded against in its corporate capacity, the individual mem bers are punished in their natural capacities for failure to do what the law requires of them as the representatives of the corporation.

We think, therefore, that the peremptory writ was properly directed to the board in its corporate capacity. In this way the power of the writ is retained until the thing is done which is commanded, and it may at all times be enforced, through those who are for the time being charged with the obligation of acting for the corporation. If, in the course of the proceedings, it appears that a part of the members have done all they could to obey the writ, the court will take care that only those who are actually guilty of disobedience are made to suffer for the wrong that is done. Those who are members of the board at the time when the board is required to act will be the parties to whom the court will look for the performance of what is

demanded. As the corporation cannot die or retire from the office it holds, the writ cannot abate as it did in Boutwell's case. · The decisions in the State courts in which this practice is sustained are numerous. *Maddox* v. *Graham*, 2 Metc. (Ky.) 56; *Soutter* v. *The City of Madison*, 15 Wis. 30; *Pegram* v. *Commissioners of Cleaveland County*, 65 N. C. 114; *The People* v. *Collins*, 19 Wend. (N. Y.) 56.

This disposes of the only question which has been argued here. It is not contended that the law of 1876 presented any valid objection to the levy of the tax. *Von Hoffman* v. *City of Quincy* (4 Wall. 535) and *Butz* v. *City of Muscatine* (8 id. 575) are decisive of this point.

The judgment of the Circuit Court will be affirmed, but as during the pendency of this writ the time has gone by when by the terms of the order for the peremptory writ the board was directed to levy the tax in question, the cause will be remanded with authority, if necessary, to so modify the order which has been entered, in respect to the time for the levy and collection of the tax, as to make the writ effective for the end to be accomplished; and it is

*So ordered.*