**ACHESON, Secretary of State,**

v.

**FUJIKO FURUSHO.**

**NG KWOCK GEE et al.**

v.

**ACHESON, Secretary of State.**

**WONG SHO GING**

v.

**McGRANERY, Atty. Gen.**

**ACHESON, Secretary of State,**

v.

**LEE WING BEW.**

**Nos. 13093, 13712, 13774, 14051.**

United States Court of Appeals Ninth Circuit.

April 1, 1954.

---

No. 13093:

A. William Barlow, U. S. Atty., Winston C. Ingman, Asst. U. S. Atty., Honolulu, Hawaii, Lloyd H. Burke, U. S. Atty., C. Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for appellant.

A. L. Wirin, Los Angeles, Cal., for appellee.

No. 13712:

Benjamin W. Henderson, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Clyde C. Downing, Arline Martin, Leila F. Bulgrin, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

No. 13774:

Benjamin W. Henderson, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Leila F. Bulgrin, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

No. 14051:

Sherman F. Furey, Jr., U. S. Atty., Marion J. Callister, Asst. U. S. Atty., Salmon, Idaho, for appellant.

J. P. Sanderson, Seattle, Wash., Peter J. Boyd, Caldwell, Idaho, for appellee.

Before DENMAN, Chief Judge, and STEPHENS, HEALY, BONE, ORR and POPE, Circuit Judges.

STEPHENS, Circuit Judge.

Each of the above entitled cases was brought under section 503 of the Nationality Act of 1940, 54 Stat. 1137, 1171, Title 8 U.S.C.A. § 903, as it existed prior to repeal and reenactment in changed form as Title 8 U.S.C.A. § 1503.

The Act provides that a person who claims to be a national of the United States and who claims that he (or she) has been denied a right or privilege of a national of the United States by a department or agency or executive thereof upon the ground that such person is not a national of the United States may institute an action against the head of the governmental activity in charge of the matter to which the denial is related " * * * for a judgment declaring him to be a national of the United States."

In the appealed case entitled Dean Acheson v. Fujiko Furusho, No. 13093, Fujiko Furusho obtained a judgment, while Dean Acheson was Secretary of State, declaring her to be a "citizen" (citizenship is inclusive of nationality) of the United States and notice of appeal was filed while Acheson remained in office. Subsequent to the appeal and before decision thereon Acheson was succeeded in office by John Foster Dulles. No substitution of Acheson by Dulles has been made. The United States Attorney in the name of Acheson has presented a motion to vacate the judgment and remand the cause with directions to dismiss it as abated upon the ground that substitution of Dulles for Acheson had not been made within six months after Acheson had left office and Dulles had succeeded him in office. The motion is based upon the provisions of Rule 19(4) of the Supreme Court, 28 U.S.C.A. and section 11 of the Judiciary Act of February 13, 1925, 28 U.S.C.A. former § 780. This motion is before us for decision.

In the appealed cases Ng Kwock Gee and Ng Kwock Jom v. Dean Acheson, No. 13712, a single document was made and entered in the district court adjudging that each plaintiff was not a national of the United States and separate notices of

appeal were filed while Acheson was still Secretary of State. The appeals were docketed under the above number. Subsequent to the filing of the notices of appeal Dulles succeeded Acheson as Secretary of State, and no substitution of Dulles for Acheson had been made within six months after Acheson had left office and Dulles had succeeded him. The United States Attorney in the name of Acheson has presented a motion to dismiss the appeal on the ground that the action has abated against Acheson, (note the motion is confined to the cause against Acheson) because no substitution was made within six months after the vacancy in office had occurred, as per Rule 25(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A., and on the additional grounds that there is no substantial need for continuing and obtaining an adjudication of the questions involved and that the evidence sustains the decision that appellants were not citizens, and that there is no substantial question on appeal. The appellants have presented a motion to substitute Dulles for Acheson as the named defendant in the causes. Both of these motions are before us for decision.

In the appealed case entitled Wong Sho Ging v. James P. McGranery, No. 13774, a judgment was made and entered adjudging that the plaintiff was not a national of the United States. The defendant originally named in the cause was J. Howard McGrath as Attorney General, and before judgment McGrath was succeeded in office by James P. McGranery who was substituted as defendant in the action. Herbert Brownell, Jr. succeeded McGranery in office, but Brownell has not been substituted as defendant in the action although after Brownell had become Attorney General an appeal was filed by Wong Sho Ging with McGranery as the named appellee. The United States Attorney has presented a motion to dismiss the appeal against McGranery on the grounds stated in cause number 13712, supra. The plaintiff-appellant has presented a motion to substitute Brown-

ell for McGranery. Both motions are before us for decision.

In the appealed case entitled Dean Acheson v. Lee Wing Bew, No.14051, a judgment was made and entered adjudging plaintiff to be a national of the United States. The named defendant was Acheson, Secretary of State, but the judgment was not made and entered until five months after Acheson had left office. The appeal was filed in this court in the name of Acheson more than six months after Dulles had succeeded Acheson. Thereafter the United States Attorney filed a motion to dismiss the entire action on the same grounds stated in cause number 13712, supra. The latter motion is before us for decision.

It will be seen from the records that the attorney claiming abatement in each separate case is the United States Attorney for the district from which the case is appealed. In the case coming from the District of Hawaii, both the United States Attorney of the Territorial district and of the Northern District of California are on the motion. It will also be seen that the nominal moving person claiming abatement is the resigned Secretary of State or the resigned Attorney General. It will also be noticed that although the titles of the motions as to abatement do not all indicate it, request is made in all of them that we hold the causes themselves abated, as well as the causes against the resigned officials. We see no impropriety in what we have pointed out, but we do see that if it is not the United States which is making the motions, and we do not hold that it is, it is the several United States Attorneys under the direction of the Department of Justice who are actually making the motions, else the resigned officials would hardly be requesting more than that the cases should be declared abated as to them.

It is not claimed by or for the former Secretary of State or the former Attorney General that any harm has come or will come to the government of the United States or any department thereof by

reason of the delay in petitioning for the substitution of the successor of the resigned officials. And the record in each case shows conclusively that these cases have continued to be live cases in the Department of Justice and in the Department of State, and that they were current items of business in those departments through the changes in the heads thereof. There is no equitable consideration involved which would result in injustice if the cases are held to survive, but since the judgments have been entered after trial declaring the proved status of the five persons-plaintiff in the instant actions, abatement of the actions would constitute a heavy injustice to them and also to the government.

The record in each case shows clearly that when the motions in relation to abatement were made, a full six months had elapsed since the separation from office of the Attorney General and of the Secretary of State without substitution of the successors to these officers. There is no issue of fact before us.

At the oral argument the United States Attorney for the Northern District of California injected the point that the district courts were without jurisdiction to entertain the cases. However, the point has not been raised in any of the motions and it was evident that the several attorneys present were not prepared to discuss it. It is too plain for argument that the subject matter is within the jurisdiction of the district court and that our jurisdiction is clear. We, therefore, proceed directly to the subject of abatement and to the motions to substitute as presented in the several motions.

 In the consideration of the main issue in these cases it is of some importance to keep in mind that abatement of a case usually follows, as of course, when there is no one to respond to a judgment which might be or has been entered in a case. When a case reaches that posture the futility of its continuing is evident, and it abates. No statute upon the subject is needed to authorize a court or judge to make an order to the effect that the case is no longer alive.

Our immediate consideration of the subject is limited to actions in which governmental officers are parties defendant, and, unless it appears otherwise, what we have to say is meant to apply specifically to instances within that limitation.

From the beginning of our judicial history and up to 1899, abatement of cases was acted upon by the federal courts as a procedural matter without the aid of any Congressional enactment or court rule. Congress treated the subject in the Act of February 8, 1899, and in § 11 of the Judiciary Act of 1925, as codified in Title 28 U.S.C.A. former § 780. The latter provision was repealed in 1948 [1] with the revision of Title 28 of the United States Code, but the Supreme Court kept its provisions without change as its Rule 19(4). The Federal Rules of Civil Procedure, Title 28 U.S.C.A., for the district courts became effective in 1938, with Rule 25(d) therein on abatement which was similar to but not exactly the same as Supreme Court Rule 19(4) and § 11 of the Judiciary Act of 1925. This court (United States Court of Appeals for the Ninth Circuit) has no specific rule on the subject but the applicable Supreme Court rules had long been the rule in this court,[2] and on May 27, 1953, it adopted, by reference, all applicable parts of both the Supreme Court rules and Federal Rules of Civil Procedure.[3]

We shall proceed, as briefly as the subject permits, to analyze the leading cases

1. Repealed by Act of June 25, 1948, c. 646, § 39, 62 Stat. 992, eff. Sept. 1, 1948.

2. "The practice shall be the same as in the Supreme Court of the United States, as far as the same shall be applicable." Rule 9, Court of Appeals for the Ninth Circuit; superseded May 27, 1953, by new Rule 8. See footnote 3 infra.

3. "1. The Federal Rules of Civil Procedure, whenever applicable, are hereby adopted as part of the rules of this court.
 "2. The practice shall be the same as in the Supreme Court of the United States, as far as the same shall be applicable." Rule 8, Court of Appeals for the Ninth Circuit, effective May 27, 1953.

prior to and up to the Act of 1899, which we hold support the conclusion that prior to the Act of 1899, before enactment of any statute or promulgation of any court rule on the subject of abatement, a case abated only when a governmental officer, a defendant in a case in which it was sought to compel him to do or not to do an act within the sphere of his duty, was separated from the office and he was therefore powerless to perform. The only exception to or modification of this rule was in cases where the duty sought to be compelled by the action, rested with a corporate board or other continuing body composed of plural membership. And here the reason for the modification is that the reason for the rule should be adhered to consistently. The board as a continuing entity has the power and the duty to comply with a judgment whenever entered.

Our conclusion, as above recited, is supported, we think, with an unbroken line of cases beginning with Secretary of the Interior v. McGarrahan, 1869, 9 Wall. 298, 76 U.S. 298, 19 L.Ed. 579. That case was in mandamus against O. H. Browning, Secretary of the Interior. Browning resigned before decision. The trial court however proceeded and directed the writ to Browning and his successor in office. The Supreme Court stated that the case abated as against Browning because he no longer could be called upon to perform the duties of the office, and as against the successor in office since he had never refused to perform them.

The case of United States v. Boutwell, 1873, 17 Wall. 604, 84 U.S. 604, 21 L.Ed. 721, was in mandamus against O. S. Boutwell, Secretary of the Treasury, to compel him to pay an order on the Treasury of the United States. The writ was denied below and the case reached the Supreme Court through the writ of error, and thereafter Boutwell resigned. The Court called the action a personal one against the officer, not the office, and held the action abated, saying: "When the personal duty exists only so long as the office is held, the court cannot com-

pel the defendant to perform it after his power to perform has ceased." In this case the Supreme Court suggested that Congress might legislate on the subject so as to permit, under proper limitations, the maintenance of the cause against a successor in office.

The case of U. S. ex rel. Warden v. Chandler, Secretary of the Navy, 1887, 122 U.S. 643, 30 L.Ed. 1244, was dismissed on authority of the Boutwell case. Cf. also United States ex rel. The International Contracting Co. v. Lamont, 1894, 155 U.S. 303, 15 S.Ct. 97, 39 L.Ed. 160; and Warner Valley Stock Co. v. Smith, 1897, 165 U.S. 28, 17 S.Ct. 225, 41 L.Ed. 621.

The dominant principle of the cases to which we have just referred, i. e., that the officer is no longer in a position to carry out the action prayed for, or which a judgment commands, is consistently applied in the case of Board of Commissioners of Leavenworth County v. Sellew, 1878, 99 U.S. 624, 25 L.Ed. 333, and in Thompson v. United States, 1880, 103 U.S. 480, 26 L.Ed. 521, wherein the cases were held not to abate. In the Sellew case a writ of mandamus was directed to the three incumbent County Board Commissioners. The Supreme Court, on writ of error, upon being shown that two of the three Commissioners had been succeeded in office by others, refused to dismiss the case on the authority of Boutwell, distinguishing the two cases by the fact that the action in the case before it was against a corporate board, a continuing entity, while in the Boutwell case the subject matter of the action in mandamus was personal to the officer. Abatement was refused in Thompson v. United States, supra, upon like reasoning.

It is of course easily seen that injustices could and very likely would occur in the automatic abatement of actions against single heads of governmental departments, and the Supreme Court in Boutwell and again in U. S. ex rel. Bernardin v. Butterworth, 1898, 169 U.S. 600, 18 S.Ct. 441, 42 L.Ed. 873, expressed its opinion that legislation was needed. However, the possibility of injustices

occurring was more easily seen than was the enactment of proper remedial legislation.

In the first place, the government may not be sued without its consent, and it has been and still is a governmental policy to grant consent sparingly. To enact a law making every suit against the head of a governmental department one virtually against the department over which he presides, would be widening the consent greatly. Besides, it might well result in the direction of a successor to an ex-official to do what he believed to be contrary to his duties without the opportunity to defend his contentions. Other difficulties are easily conjured. Nevertheless, Congress tried it, as we have heretofore mentioned, by enacting the Act of February 8, 1899, 30 Stat. 822.[4]

In the Act Congress sought to cure the instantaneous, automatic abatement of actions against governmental officers by reason of their being separated from office, but it did not attempt to change the principle upon which such abatement acted. It kept alive the principle but suspended the action for a fixed period of time, and according to Snyder v. Buck, 1950, 340 U.S. 15, 18–19, 71 S.Ct. 93, 95 L.Ed. 15,* limited its application to the appeal in cases where the separation from office came subsequent to judgment.[4a] Under that Act, abatement would not occur instanter, but would occur after *twelve months*, without more.

During the twelve months, if a petition was filed showing "a necessity for the survival thereof to obtain a settlement of the questions involved", the court could "allow the same to be maintained by or against" the officer's successor in office.

The first case on the subject to reach the Supreme Court after the 1899 legislation, was Caledonian Coal Co. v. Baker, 1905, 196 U.S. 432, 25 S.Ct. 375, 49 L.Ed. 540, a mandamus proceeding against a United States District Judge. The judge resigned. His successor consented to be substituted, and the case proceeded to judgment.

Le Crone v. McAdoo, 1920, 253 U.S. 217, 40 S.Ct. 510, 64 L.Ed. 869, was in mandamus against Secretary of the Treasury McAdoo, who resigned his office while the action was pending. A judgment had been entered in a trial court to the effect that money should issue from the United States Treasury for payment by the Secretary of State to the plaintiff. The Supreme Court ordered the writ of error dismissed since the action against McAdoo had abated, twelve months having elapsed after his resignation and no substitution having been made.

In Richardson v. McChesney, 1910, 218 U.S. 487, 31 S.Ct. 43, 54 L.Ed. 1121; Pullman Co. v. Croom, 1913, 231 U.S. 571, 34 S.Ct. 182, 58 L.Ed. 375, and Shaffer v. Howard, 1919, 249 U.S. 200, 39 S. Ct. 255, 63 L.Ed. 559, abatement was or-

---

4. Act of February 8, 1899, 30 Stat. 822: "Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That no suit, action, or other proceeding lawfully commenced by or against the head of any Department or Bureau or other officer of the United States in his official capacity, or in relation to the discharge of his official duties, shall abate by reason of his death, or the expiration of his term of office, or his retirement, or resignation, or removal from office, but, in such event, the Court, on motion or supplemental petition filed, at any time within twelve months thereafter, showing a necessity for the survival thereof to obtain a settlement of the questions involved, may

allow the same to be maintained by or against his successor in office, and the Court may make such order as shall be equitable for the payment of costs."

* But cf. Justice Frankfurter's dissent in Snyder v. Buck, 1950, 340 U.S. 15, at pages 22, 71 S.Ct. 93 et seq.

4a. See e. g. Le Crone v. McAdoo, 1920, 253 U.S. 217, 40 S.Ct. 510, and Wattis v. Lane, 1921, 255 U.S. 566, 41 S.Ct. 447, 65 L.Ed. 789, wherein only the writ of error and the appeal, respectively, were dismissed leaving undisturbed the judgments below. But note: That a district court judgment purporting to compel an ex-officer to perform a duty of the office would be wholly ineffective.

dered as in the Boutwell case and for the same reason, since the Act of 1899, modifying abatement, did not affect cases in state courts.

In Murphy v. Utter, 1902, 186 U.S. 95, 22 S.Ct. 776, 46 L.Ed. 1070, and Marshall v. Dye, 1913, 231 U.S. 250, 34 S.Ct. 92, 58 L.Ed. 206, the doctrine of Board of Commissioners of Leavenworth County v. Sellew, 1878, 99 U.S. 624, 25 L.Ed. 333, was followed and the causes were held not to have abated because the actions were against boards which act as continuing entities.

In 1925 Congress again entered the field of abatement by enacting § 11[5] of the Judiciary Act of February 13, 1925, Title 28 U.S.C.A. former § 780, 43 Stat. 936, 941. By this legislation, the abatement occurred upon the expiration of six months *after separation* from office, but the court "of first instance or an appellate tribunal" was given power "to permit the cause to be continued and maintained by or against the successor in office * * *" if it be "satisfactorily shown * * * that there is a substantial need for so continuing and maintaining the cause and obtaining an adjudication of the questions involved."

The case of U. S. ex rel. Claussen v. Curran, 1928, 276 U.S. 590, 48 S.Ct. 206, 72 L.Ed. 720, relied upon very heavily in the instant cases as requiring abatement in them, and Mathues v. U. S. ex rel. Cunningham, 1930, 282 U.S. 802, 51 S.Ct. 84, 75 L.Ed. 721 (habeas corpus proceedings), and Davis v. Preston, 1930, 280 U.S. 406, 50 S.Ct. 171, 74 L.Ed. 514, followed the statute and the cases were dismissed because the officer-defendant had left office and the successor had qualified but had not been substituted in the action within six months. The reason for abatement was the same as in Boutwell, and is entirely consistent with our conclusion that abatement of an action occurs when it is sought by the action to compel an officer to perform an alleged duty of his office and he is separated from the office while the action is pending. The decision of the Third Circuit in U. S. ex rel. Trinler v. Carusi, 3 Cir., 1948, 168 F.2d 1014, is not inconsistent with our conclusion. The case of Ex parte La Prade, 1933, 289 U.S. 444, 53 S.Ct. 682, 77 L.Ed. 1311, involved a suit by a *state* attorney general who resigned. The successor in office objected to his being substituted, and the Supreme Court held that, in the absence of a showing that he intended to continue the alleged unlawful acts of his predecessor, Congress had no authority to compel the substitution since the attorney general was a *state* officer.

In Defense Supplies Corp. v. Lawrence Warehouse Co., 1949, 336 U.S. 631, 69 S.Ct. 762, 764, 93 L.Ed. 931, the Supreme Court held the action did *not* abate in a case where judgment was entered after dissolution of the plaintiff corporation because (1) § 2 of the Act dissolving the Defense Supplies Corporation provided that "no action shall abate", 59 Stat. 310; (2) the district court judgment was entered within the statutory period during which substitution could have been made; (3) a corporation is not erased by subsequent dissolution.

Snyder v. Buck, 1950, 340 U.S. 15, 71 S.Ct. 93, 95 L.Ed. 15, is the most recent pronouncement by the Supreme Court on

---

5. "Where, during the pendency of an action, suit, or other proceeding brought by or against an officer of the United States, or of the District of Columbia, or the Canal Zone, or of a Territory or an insular possession of the United States, or of a county, city, or other governmental agency of such Territory or insular possession, and relating to the present or future discharge of his official duties, such officer dies, resigns, or otherwise ceases to hold such office, it shall be competent for the court wherein the action, suit, or proceeding is pending, whether the court be one of first instance or an appellate tribunal, to permit the cause to be continued and maintained by or against the successor in office of such officer, if within six months after his death or separation from the office it be satisfactorily shown to the court that there is a substantial need for so continuing and maintaining the cause and obtaining an adjudication of the questions involved." § 11, Act of 1925.

**292**

the question of abatement. That case involved a petition for a writ of mandamus against the Paymaster General of the Navy to compel him to pay a widow's allowance. Petitioner was granted the writ in the district court. Then, in the order of events, the Paymaster, Buck, retired and was succeeded in office; an appeal from the writ was taken in Buck's name; no substitution was ever made; the Court of Appeals entered judgment ordering the district court to dismiss the complaint as abated; the Supreme Court affirmed on the ground that the entire action had abated.[6]

We think the above review of cases, after as well as before the Congressional enactments, show clearly that judges and legislators, in passing upon the subject of abatement of cases wherein government officers were parties were acting upon the impropriety and futility of going ahead where the judgment would not be effective. In no case is there any hint of or expressed reason for extending the abatement doctrine to actions wherein the judgment merely adjudicates the na-

tionality status of the plaintiff which, by the way, is as binding to the world as it is to the defendant officer who cannot be under any judicial command in relation to the operation of the judgment. While the adjudication of the plaintiff as a national of the United States, under § 903 of Title 8 U.S.C.A.[7] would result in the cessation of the deprivation of the right or privilege which entitled the plaintiff to sue, it does not order and cannot constitute an order to the defendant as in mandamus, habeas corpus, or injunction.

On the other hand, it is greatly to the interest of every official of the government and of every citizen of the country that, where questioned, the nationality of a person should meet with prompt settlement.

It is apparent from what we have said that the reason for abatement of actions in which officers of the United States government are parties and the officer is separated from office, does not apply to any of the motions here under consideration. If, contrary to our view, any of the instant cases have abated and the mo-

6. Note the apparent inconsistency between the decisions in Davis v. Preston, 1930, 280 U.S. 406, 50 S.Ct. 171, and Snyder v. Buck, 1950, 340 U.S. 15, 71 S.Ct. 93. Both were decided after the 1925 Act. In both cases actions were brought against government officials in their official capacities. In both cases the plaintiff won a judgment; the official retired; and an appeal was taken in the name of the retired official after his retirement and without the substitution of his successor. Both cases were held to have abated. Yet, in the Davis case only the *writ of certiorari* but not the entire action was dismissed, while in the Snyder case the district court was ordered to dismiss the complaint. The Davis case was distinguished in the Snyder opinion 340 U.S. at pages 20–21, 71 S.Ct. 93 by reason of a special statute, 42 Stat. 1443, 49 U.S.C.A. § 74(h), on substitution in Federal Employers' Liability Act [45 U.S.C.A. § 51 et seq.] cases which provided that such actions would not abate and that substitution could be made at any time prior to satisfaction of the judgment. The Supreme Court held that the statute applied to the disposition of the case before the district court, but

did not affect the appellate jurisdiction, and therefore the *appeal*, but not the entire action, abated.

7. "If any person who claims a right or privilege as a national of the United States is denied such right or privilege by any Department or agency or executive official thereof, upon the ground that he is not a national of the United States, such person, regardless of whether he is within the United States or abroad, may institute an action against the head of such Department or agency in the District Court of the United States for the District of Columbia or in the district court of the United States for the district in which such person claims a permanent residence for a judgment declaring him to be a national of the United States. * * *." Title 8 U.S.C.A. former § 903, Oct. 14, 1940, c. 876, Title I, Subchap. V, § 503, 54 Stat. 1171.

Repealed (see footnote 1, supra) by Act of June 25, 1948, c. 646, § 39, 62 Stat. 992, eff. Sept. 1, 1948, see new Title 8 U.S.C.A. § 1503, but actions pending under Title 8 U.S.C.A. § 903 were saved by § 405(a) of the Immigration and Nationality Act of 1952, 66 Stat. 280, 8 U.S.C.A. § 1101 note.

tions to dismiss should be granted, the reason for such action must be found in Congressional action or promulgated rules of court to which we have made mention, and it is the claim of those urging dismissal of the actions that the cases have abated by virtue of Rule 19(4) of the Supreme Court Rules, or Rule 25 (d) of the Federal Rules of Civil Procedure to which we have hereinbefore briefly referred.

We are of the opinion, however, that it was not the legislative or judicial intention in the statutes or in the court rules, to enlarge the base for abatement, and no expression may be found anywhere to the effect that there existed any reason for broadening the base. We think, and hold, that the intention of statutory enactment and court rule promulgation has been to remedy the ill found in Boutwell. To that end, we direct our attention to a detailed analysis of the statutes and rules in suit.

We have seen that the Congressional Act of 1899 did not affect the subject of abatement in any practical manner (see footnote 4a, supra) except to suspend immediate abatement, upon the happening of the officer-party's separation from office, for a period of *twelve months* during which, in limited circumstances, the case would be kept alive against a successor in the office. The Act states " * * * *no suit,* action, or other proceeding * * * by or against the head of any Department or Bureau or other officer of the United States in his official capacity, or in relation to the discharge of his official duties, *shall abate * * * *", Act of February 8, 1899, 30 Stat. 822, but, within the twelve month period certain things must be done in order to maintain the action. [Italics ours.]

Up to the time Congress took such action, the only matter of concern as to the subject of abatement was that pointed out in Boutwell which was that, even in cases which should continue against the successor of a retired officer-party, the cause automatically abated upon the retirement from office of the officer-party. The Act of 1899 cured this fault by providing for a suspension of abatement for a period of *twelve months,* but the suspension did not apply to all cases in which a government officer-party was separated from office. It extended only to cases in which (a) the officer sued or was sued *in his official capacity,* or (b) in relation to the *discharge of his official duties.* Unquestionably, Congress was thinking of the hint to it contained in Boutwell. The clause confining the exception to the officer's "official capacity" of course meant that a private suit by or against an officer would not abate. The clause in relation to the "discharge of his official duties" of course was meant to cure just such situations as were mentioned in the Boutwell case. Declaratory actions were unknown at the time the 1899 statute was passed, and the declaration of a nationality status by court action could not have been contemplated by Congress. And the only use to which the statute was put during its existence was to relieve the situations mentioned in Boutwell.

Section 11 of the Judiciary Act of 1925 [8] is different from the 1899 statute.[9] The 1899 enactment began, " * * * no suit * * * shall abate * * *," while in the 1925 enactment the law-makers assumed that, upon the officer-party's separation from office, the action would abate unless by statute in some particular circumstance it was provided otherwise. They made but one exception which is that cases "relating to the present or future discharge of his [the officer-party's] official duties * * *" do not abate immediately upon the separation from office of the officer-party,

8. The Act of 1925 is set out in footnote 5, supra.

9. The Act of 1899 is set out in footnote 4, supra. While the 1899 statute applied only to federal officers, § 11 of the 1925 Judiciary Act, in response to a suggestion by the Supreme Court in Irwin v. Wright, 1922, 258 U.S. 219, 42 S.Ct. 293, 66 L.Ed. 573, made provision for the substitution of state officers in suits pending in federal courts.

but may be permitted to survive against the successor in office if, within *six months* [10] (after separation from office) it is satisfactorily shown to the court that there is substantial need for "obtaining an adjudication of the questions involved."

By reason of the change in the casting of the latter Act from that of the former or 1899 Act, the exception as to private suits would have no use in the statute because they would abate immediately if not specifically excepted from such fate. And we see again that the exception relates "to the present or future discharge of his [the officer-party's] official duties". No proceeding in the nature of § 903, Title 8 U.S.C.A. was in contemplation of Congress at the time of the passing of the Judiciary Act of 1925, and no doubt § 11 was but a recasting of the remedy provided in 1899 to cure the ills pointed out in the Boutwell case, as well as to remedy the Irwin v. Wright situation (see footnote 9, supra).

In 1948, the Judiciary Act of 1925 was repealed and the abatement subject, as it applied to actions in the Supreme Court, was covered by Supreme Court Rule 19(4).[11] The subject, as it was governed in the district courts, was covered in Rule 25(d) of the Federal Rules of Civil Procedure.[12]

This latter rule was prepared by a Commission which gave the subject of rules of district courts detailed study. It had the whole history of abatement in cases of separation of officer-parties before it, and made very little change from § 11 of the Act of 1925. It took notice of the fact that in § 11 abatement was suspended for six months, but in Rule 25 (d) the Commission made the six months run from the date of the qualification in office of the succeeding officer, instead of from the date of separation from office, as in § 11, and omitted the clause relating to the present or future duties of the officer-party, and also the clause about the need for obtaining an adjudication of the questions involved, because those features were adequately covered by the requirement in the rule that abatement does occur unless "it is satisfactorily shown to the court that there is a substantial need for so continuing and maintaining it [the action]."

10. The 1899 Act had allowed substitution to be made within *twelve months*.

11. "Where a public officer, by or against whom a suit is brought, dies or ceases to hold the office while the suit is pending in a federal court, either of first instance or appellate, the matter of abatement and substitution is covered by section 11 of the Act of February 13, 1925 (28 U.S. C.A. former § 780). Under that action a substitution of the successor in office may be effected only where a satisfactory showing is made within *six months* after the death or separation from office." [Emphasis ours.] Rule 19(4) of the United States Supreme Court, 28 U.S.C.A.

12. "When an officer of the United States, or of the District of Columbia, the Canal Zone, a territory, an insular possession, a state, county, city, or other governmental agency, is a party to an action and during its pendency dies, resigns, or otherwise ceases to hold office, the action may be continued and maintained by or against his successor, if within *6 months after* the *successor takes office* it is satisfactorily shown to the court

that there is a substantial need for so continuing and maintaining it. Substitution pursuant to this rule may be made when it is shown by supplemental pleading that the successor of an officer adopts or continues or threatens to adopt or continue the action of his predecessor in enforcing a law averred to be in violation of the Constitution of the United States. Before a substitution is made, the party or officer to be affected, unless expressly assenting thereto, shall be given reasonable notice of the application therefor and accorded an opportunity to object." Rule 25(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A., as amended Dec. 29, 1948, eff. Oct. 20, 1949. [Emphasis ours.]

According to the notes of the Advisory Committee on Rules, the second sentence of Rule 25(d) was enacted in response to the Supreme Court's decision in Ex parte La Prade, 1933, 289 U.S. 444, 53 S.Ct. 682, where it was held that in order to substitute a state officer it must be shown that he adopts or threatens to adopt the unconstitutional attitude of his predecessor.

■ We repeat: That because the intent of the Congress and of the Supreme Court in statutes and rules relating to abatement was and is to remedy the situation revealed in Boutwell, and that no reason is apparent for either the Congress or the Supreme Court to intend otherwise, and because the reason for the statutes and court rules does not reasonably apply to § 903 but is inconsistent with the situation found in § 903 cases, neither the statutes nor the rules should be applied to proceedings under that section. And we hold this opinion even if it would seem to appear from the face of the statute or rule that officer-parties in § 903 are not excepted.

■ We invoke the principle so well stated in Ozawa v. United States, 1922, 260 U.S. 178, 194, 43 S.Ct. 65, 67, 67 L. Ed. 199, as follows: "It is the duty of this Court to give effect to the intent of Congress. Primarily this intent is ascertained by giving the words their natural significance, but if this leads to an unreasonable result plainly at variance with the policy of the legislation as a whole, we must examine the matter further. We may then look to the reason of the enactment and inquire into its antecedent history and give it effect in accordance with its design and purpose, sacrificing, if necessary, the literal meaning in order that the *purpose* may not fail. See Holy Trinity Church v. United States, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226; Heydenfeldt v. Daney Gold Mining Co., 93 U.S. 634, 638, 23 L.Ed. 995. [Emphasis ours.]" See, also, Warner v. Goltra, 1934, 293 U.S. 155, 158, 55 S.Ct. 46, 79 L.Ed. 254.

In the early case of Smythe v. Fiske, 1874, 90 U.S. 374, 380, 23 L.Ed. 47, it is said, "Where doubt exists as to the meaning of a statute, * * * [t]he pre-existing law, and the reason and purpose of the new enactment are also considerations of great weight."

We quote from Sorrells v. United States, 1932, 287 U.S. 435, 446, 53 S.Ct. 210, 214, 77 L.Ed. 413, "Literal interpretation of statutes at the expense of the reason of the law and producing absurd consequences or flagrant injustice has frequently been condemned [citing cases]. * * * 'All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language, which would avoid results of this character. *The reason of the law in such cases should prevail over its letter.'* [Emphasis ours.]" Numerous cases in which this principle was applied are cited in the Sorrells case, supra, 287 U.S. at pages 446, 447, 448, 53 S.Ct. 210.

■■ In summation, we have seen that the basis for the many instances in which courts have dismissed cases or have dismissed them as to an officer of the government after his separation from office, as having abated, has been for the reason that the judgment which had been or might be obtained, could not and should not be enforced against the out-of-office-defendant. Congress in enacting § 11 of the 1925 Act did not disturb this principle, but accepted it by suspending abatement for a period of time within which, in proper cases, the successor in office might be substituted. As said in Snyder v. Buck, 1950, 340 U.S. 15, 18, 71 S.Ct. 93, 95, "* * * an action aimed at compelling an official to discharge his official duties abated where the official died or retired from office."

Rule 25(d) of the Federal Rules of Civil Procedure and Rule 19(4) of the United States Supreme Court cover the same area. Fleming v. Goodwin, 8 Cir., 1948, 165 F.2d 334, 337.

In the Fleming case, the plaintiff government official, Bowles, Price Administrator, O.P.A., was praying for three times the amount already overcharged. Bowles resigned and Fleming was appointed to succeed him. Although six months, under Rule 25(d) supra, had elapsed before Fleming petitioned to be substituted, the Court of Appeals refused to dismiss the case as one that had abat-

ed, and ordered Fleming substituted. See Northwestern Lumber & Shingle Co. v. United States, 10 Cir., 1948, 170 F.2d 692. See, also, United States v. Koike, 9 Cir., 1947, 164 F.2d 155; and United States v. Hirahara, 9 Cir., 1947, 164 F.2d 157. The rule which is derived from the statute is no broader than the reason for it. Fleming v. Goodwin, 8 Cir., 1948, 165 F.2d 334, 338. But, cf. Bowles v. Wilke, 7 Cir., 1949, 175 F.2d 35.

■ In summation, also, we repeat that since a judgment rendered in a § 903 action cannot be a command to any head of any governmental department to do anything or to refrain from doing anything, but fixes a status for the plaintiff which all persons inclusive of governmental authorities must respect, the action does not relate to the "discharge", i.e., the carrying out, of any official duty.

■ Since the judgments obtained or which may be obtained in the instant cases would not be ineffectual, but would establish to the world whether or not the plaintiffs are United States nationals, no reason or law exists requiring their abatement simply because there has been a period when the ex-officio defendant has not been formally made a party to the action.

Undoubtedly, the federal courts have the inherent power and duty to require that cases be kept in the course of accepted and regular procedure. And, in the circumstances of the instant cases and not by reason of statute or court rule, action should be taken upon the fact that the cases themselves have not abated but, by reason of the nominal defendants' separation from office, their successors in office should be substituted and the cases, with the ex-officio defendants substituted as defendants, should proceed in the regular course of appeal in this court.

■ However, we note that in Dean Acheson v. Lee Wing Bew a notice of appeal was purportedly filed on behalf of Acheson at a time when Acheson had left office and no longer had any authority to bring any official action. Davis v. Preston, 1930, 280 U.S. 406, 407, 50 S.Ct. 171; Snyder v. Buck, 1950, 340 U.S. 15, 20, 71 S.Ct. 93. Therefore, we hold that the notice of appeal was not properly filed in this case and consequently no appeal is pending before this court. However, since our discussion as to the abatement principle applies, the action in the district court does not abate upon succession in office.

■ The notice of appeal in Wong Sho Ging v. James P. McGranery was not filed until after Brownell had succeeded McGranery as Attorney General. However, the appeal was taken by Wong Sho Ging who is a proper party. The fact that the named appellee, McGranery, is no longer a proper party is not fatal to this appeal. Yuen Jung v. Barber, 9 Cir., 1950, 184 F.2d 491, 497.

It is therefore ordered that:

In No. 13093, Dean Acheson v. Fujiko Furusho, the motion to dismiss is denied, and Dulles is substituted as defendant-appellant in the action.

In No. 13712, Ng Kwock Gee and Ng Kwock Jom v. Dean Acheson (two cases consolidated and appealed as one), the motion to substitute Dulles for Acheson in each case is granted. The motion to dismiss each case as abated is denied.

In No. 13774, Wong Sho Ging v. James P. McGranery, the motion to dismiss the case as abated is denied. The motion to substitute Brownell for McGranery is granted.

In No. 14051, Dean Acheson v. Lee Wing Bew, the motion to dismiss the case as abated is denied, and the appeal is dismissed leaving the judgment below intact.