**WHISPERING CREEK CONDOMINIUM OWNER ASSOCIATION, a corporation; and Ike Waldrop, John Creed, Lee Waldrop, Archie Stepp, Irvin Johnson, Diana Waddell, Eva Koehler and Stan Thomson, Appellants,**

v.

**ALASKA NATIONAL INSURANCE COMPANY, Appellee.**

No. S–2621.

Supreme Court of Alaska.

May 5, 1989.

Milton L. Moss and Dennis & Moss, Anchorage, for appellants.

David Pease and Biss & Holmes, Anchorage, for appellee.

Before RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

OPINION

COMPTON, Justice.

This appeal involves the construction of an insurance policy. The dispositive question is whether the superior court improperly granted summary judgment to the insurer on the issue of coverage for loss caused by an alleged collapse. We conclude that coverage existed under provisions of the policy relating to collapse. Therefore, we reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Alaska National Insurance Company (Alaska National) issued a multi-peril insurance policy to the Whispering Creek Condominium Owners Association (Whispering Creek) providing property and liability coverage.

On February 12, 1986 an Anchorage Department of Public Works, Building Safety Division (BSD) inspector noted that some of the condominium ceilings at the Whispering Creek complex showed signs of possible collapse. On the same day, the BSD operations manager reported that the ceiling joists had deteriorated to a point where they were not capable of supporting a water or snow load and that collapse could occur. On February 18, 1986 the BSD posted warning notices on the condominiums and informed the residents by certified mail of the need to abate or correct the noted dangerous conditions.

Whispering Creek filed a claim under its policy with Alaska National, seeking costs to repair the condominiums, thereby reducing the risk of collapse. Alaska National investigated the claim and determined that it was based upon damage due to wet or dry rot, a condition created by an improperly designed or constructed roof structure. Alaska National informed Whispering Creek that there was no coverage for the damages it claimed, because damages due to wet or dry rot were specifically excluded under the terms and conditions of the policy. Ironically, Alaska National also warned Whispering Creek of the danger of collapse.

Whispering Creek sued Alaska National, seeking payment for damages caused by rot and deterioration. Alaska National moved for summary judgment, arguing that damages caused by rot and deterioration were specifically excluded under the terms and conditions of the policy.

Whispering Creek opposed Alaska National's motion and also filed a cross-motion for summary judgment. Whispering Creek abandoned its claim that the damages were due to rot and deterioration, but claimed that there was coverage nonetheless for design defect or negligent construction, for water damage caused by roof leaks which resulted in rot, or for collapse. Alaska National replied that design defect and negligent construction also were specifically excluded from coverage under the policy, that case law held that rot was not water damage, and that there was no direct physical loss involving collapse, but merely a threat of collapse which also was not covered under the policy.

The superior court granted Alaska National's motion, denied Whispering Creek's cross-motion, and dismissed all of Whispering Creek's claims with prejudice. It entered final judgment and awarded Alaska National $4,000.00 in attorney's fees.

## II. DISCUSSION

A motion for summary judgment is to be granted only when the record indicates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Alaska R.Civ.P. 56(c); *Hale v. Fireman's Fund Ins. Co.*, 731 P.2d 577, 579 (Alaska 1987). Further, "the construction of an insurance contract is a matter for the court, unless its interpretation is dependent upon the resolution of controverted facts." *Id.* at 579 (quoting *O'Neill Investigations v. Illinois Employers Ins. of Wausau*, 636 P.2d 1170, 1173 (Alaska 1981)).

■ It is well established that we treat insurance policies as contracts of adhesion[1] when interpreting policy lan-

---

1. In *U.S. Fire Ins. Co. v. Colver*, 600 P.2d 1, 3 (Alaska 1979), we noted, quoting *Stordahl v. Government Employees Ins. Co.*, 564 P.2d 63, 65–66 (Alaska 1977), that:

 The purpose of contract interpretation is to ascertain and effectuate the reasonable expectations of the parties. We have noted, however, that interpretation of insurance contracts is controlled by somewhat different standards. This is due, in part, to the inequality in bargaining power and to the fact that certainty is required to ascertain rates. An insurance policy may be considered a contract of adhesion, and as such, should be construed to provide the coverage which a layperson would have reasonably expected, giving a lay interpretation of the policy language. [Footnotes omitted].

 In the original this paragraph included the following footnote to explain the phrase "contract of adhesion:"

 *Standard Oil Company of California v. Perkins*, 347 F.2d 379, 384 n. 5 (9th Cir.1965) states:

 "Adhesion contract" is a handy shorthand descriptive of standard form printed contracts prepared by one party and submitted to the other on a "take it or leave it" basis. The law

guage. *Jarvis v. Aetna Cas. & Sur. Co.,* 633 P.2d 1359, 1363 (Alaska 1981); *U.S. Fire Ins. Co. v. Colver,* 600 P.2d 1, 3 (Alaska 1979). Accordingly, we construe them "so as to provide that coverage which a layperson would have reasonably expected from a lay interpretation of the policy terms." *U.S. Fire Ins. Co.,* 600 P.2d at 3. *See also Starry v. Horace Mann Ins. Co.,* 649 P.2d 937, 939 (Alaska 1982). To determine what is objectively reasonable, the court will look at the contract terms. *See O'Neill Investigations, Inc. v. Illinois Employers Ins. of Wausau,* 636 P.2d 1170, 1176–1177 (Alaska 1981). *See generally* R. Keeton, *Insurance Law* § 6.3, at 351–57 (1971). *Accord Allstate Ins. Co. v. Ellison,* 757 F.2d 1042, 1044 (9th Cir.1985). The terms should be interpreted in an ordinary and popular sense as would a man of average intelligence and experience. *See Jarvis,* 633 P.2d at 1363. This principle reflects our awareness that long and complicated insurance policies are not always thoroughly examined by policyholders and that a "lay person's expectation of insurance coverage ... [is] formed by many factors besides the language of the policies themselves." *O'Neill Investigations,* 636 P.2d at 1177. Additionally, insurance coverage provisions should be broadly construed while exclusions are to be interpreted narrowly. *Starry,* 649 P.2d at 939.

Neither party claims that there was a genuine issue as to any material fact in the proceedings before the superior court. Thus, the answer to the dispositive question in this case requires only an interpretation of Whispering Creek's insurance policy. Accordingly, this court must determine whether Alaska National was entitled to summary judgment as a matter of law.

Whispering Creek's primary argument is that the damage to the condominiums constituted collapse of the building and should be covered under the collapse provision of the policy. Alaska National argues that (1) because the building had not fallen to the

has recognized there is often no true equality of bargaining power in such contracts and has accommodated that reality in construing them. *See* Kessler, Contracts of Adhesion, 43 Columbia L.Rev. 629 (1943).

ground, it had not collapsed and was not covered under the collapse provision of the policy; and (2) the damage was caused by "wet or dry rot" and was therefore excluded under exclusion provisions of the policy. Pertinent provisions of the insurance policy are as follows:

SPECIAL MULTI–PERIL POLICY SECTION I—CONDOMINIUM SPECIAL BUILDING FORM

II. ADDITIONAL COVERAGE.

COLLAPSE—This policy insures against risk of *direct physical loss involving collapse* of a building or any part of a building *caused* only *by* one or more of the following:

a. fire; lightning; ... water damage; all only as insured against in this policy;

b. *hidden decay....*

....

VII. EXCLUSIONS.

2. This policy *does not insure* under this form *against loss caused by:*

A. Wear and tear, *deterioration,* rust or corrosion, mold, *wet or dry rot,* inherent or latent defect....

Policy No. 86B PS 01298, Form MP 00 82 (10/83), Section I—Condominium Special Building Form (emphasis added).

A. COLLAPSE.

 Whispering Creek argues that the abatement notice posted on the condominium by the BSD rendered the condominium "uninhabitable" and that "[t]his action by the Municipality constituted a constructive collapse caused by hidden decay." Alaska National asserts that there was no "total or partial collapse" of the condominium.

To resolve this dispute we must interpret the "collapse" provision of the insurance policy [2] as it relates to a building that has not fallen to the ground. While this is a question of first impression in Alaska, it

2. The "collapse" provision apparently first appeared in insurance policies in the United States in 1954. *Morton v. Travelers Indem. Co.,* 171 Neb. 433, 106 N.W.2d 710, 718 (1960).

was apparently first addressed in other jurisdictions beginning in 1959.

In *Travelers Fire Insurance Co. v. Whaley,* 272 F.2d 288 (10th Cir.1959), there was no claim that "the building or any part thereof, collapsed in the sense that it tumbled down or fell in a heap." *Id.* at 289. Nevertheless, the court found that the house involved was covered under the collapse provision of the insurance policy because the "substantial integrity of the building had been impaired to such an extent as to render it subject to the inclemency of the weather and rendering its contents more easily subject to the elements." *Id.* In rendering this construction, the court explicitly rejected a "narrow abstract construction of the word collapse," *id.* at 290, stating that, "[i]f the appellant intended that the word 'collapse' should be ascribed the abstract dictionary definition it now contends for, it should have so stated." *Id.*

In *Jenkins v. United States Fire Insurance Co.,* 185 Kan. 665, 347 P.2d 417, 420 (1959), the court noted that the damage in the home involved "created an unsafe and dangerous situation with a possibility of its caving or falling in." It then held that "settling, falling, cracking, bulging or breaking of the insured building, or any part thereof, in such a manner as to materially impair the basic structure or substantial integrity of the building would be regarded as a 'collapse' of the building for policy purposes." *Id.* at 422–43.

In *Thornewell v. Indiana Lumbermens Mutual Insurance Co.,* 33 Wis.2d 344, 147 N.W.2d 317, 320 (1967), the court stated:

> If the condition of the part of the building claimed to be in a state of collapse is such that the basic structure or substantial integrity of the part is materially

impaired so that it cannot perform its structural function as a part of the building and is in *immediate danger of disintegration,* then it can be said to be in a state of collapse within the meaning of the extended coverage of the policy.

(Emphasis added).

More recently, a Florida appellate court construed the collapse provision of an insurance policy to afford coverage because it was undisputed that the concrete blocks in a motel wall had separated, with the wall bulging outward and away from the concrete slab floor, and the building was in imminent danger of falling further. *Auto Owners Ins. Co. v. Allen,* 362 So.2d 176 (Fla.App.1978). Finally, a Colorado court extended coverage under the collapse provision of an insurance policy to a home in which the ridge of the roof had fallen "a few feet," causing the City and County of Denver to require that the plaintiffs vacate the house. *Sherman v. Safeco Ins. Co.,* 716 P.2d 475 (Colo.App.1986).

There is no dispute that the roof of the Whispering Creek Complex was dangerous and in immediate danger of complete collapse. On February 13, 1986 the operations manager for the BSD sent a certified letter to one of the condominium owners notifying her of "the existence of major deficiencies which are considered to be Life Safety [sic] and must be corrected." This letter enclosed the BSD report regarding her condominium. The report stated: "[T]he roof ceiling joist ... can collapse causing serious injuries to the occupants."

On February 18, 1986 the BSD posted a warning notice on the building declaring it to be in a "dangerous condition" that constituted a "life hazard" and a "public nuisance." [3] The notice gave the condominium

---

**3.** The BSD posted the warning notice pursuant to its authority under Section 23.65.401(b) of the Anchorage Municipal Code. Section 23.65.401(b) reads in part:

> (b) Notice and Order. The building official shall issue a notice and order directed to the record owner of the building. The notice and order shall contain:
>
> ....
>
> (2) A statement that the building official has found the building to be *dangerous* with a

brief and concise *description of the conditions found to render the building dangerous* under the provisions of Section [23.65.]302 of this code.

Anchorage Municipal Code, Chapter 23.65 Local Amendments to the Uniform Code for the Abatement of Dangerous Buildings, 1982 Edition (Supp. # 23 6/30/83). (Emphasis added). The Municipality warning notice identified the building to be dangerous under provisions 5,

owners until March 20, 1986, to correct and alter the dangerous condition of the building. Failure to comply with the notice and order is a misdemeanor and failure to commence the work compelled to be done by the order will justify the BSD to "cause the building ... to be vacated." [4] Whispering Creek condominium owners did not appeal [5] the BSD order and notice and therefore occupants had no practical alternative but to comply.

Finally, in a letter addressed to Whispering Creek's attorney dated April 1, 1986 Alaska National stated that the condominium "structure has been weakened considerably because of the rotting of the support beams in the ceiling and may well be in danger of collapsing if the snow load builds up or if a melting period occurs where the water can collect at a low spot."

In view of the undisputed evidence that the Whispering Creek complex was in a life-threatening condition and in imminent danger of collapse, we conclude that the damage producing this less than total collapse is covered under the collapse provision of the policy.

Having determined that the Whispering Creek complex has sustained a collapse for

insurance policy purposes, coverage under the Alaska National policy is not yet assured. The Alaska National policy conditions coverage for *collapse* upon causation of the collapse by "hidden decay," but excludes coverage for damage caused by "wet or dry rot."

### B. HIDDEN DECAY.

The term "hidden decay" is not defined in the policy. However, in its brief, Alaska National equates "decay" with "rot" and presents its interpretation of this policy provision: "Coverage is provided under the collapse portion of the policy if a physical collapse occurs as a result of vermin, *rot, (decay)* [6] or a latent defect." (Emphasis added; footnote added).

Alaska National does not deny that the condition of the Whispering Creek complex was caused by rot. Rather, Alaska National argues that it is not liable because *damage* caused by rot is excluded from coverage under the policy. Yet by Alaska National's own interpretation, if *collapse* is caused by "rot (decay)," the collapse provision of the policy would cover the claim.

On these facts, the distinction between "hidden decay" and "rot" is a distinction

---

8, and 9 of Section 23.65.302. Section 23.65.302 reads in part:

Dangerous Building.

Sec. 302. For the purpose of this code, any building or structure which has *any or all* of the conditions or defects hereinafter described shall be deemed to be a dangerous building, *provided that such conditions or defects exist to the extent that the life, health, property or safety of the public or its occupants are endangered:*

....

5. Whenever any portion or member or appurtenance thereof is *likely to fail*, or to become detached or dislodged, *or to collapse* and thereby injure persons or damage property.

....

8. Whenever the building or structure or any portion thereof, because of ... is *likely to partially or completely collapse.*

9. Whenever, for any reason, the building or structure, or any portion thereof, is *manifestly unsafe for the purpose for which it is being used.*

(Emphasis added).

4. Anchorage Municipal Code 23.65 Chapter 7 reads in part:

Enforcement of the Order of the Building Official or the Board of Appeals.

Compliance.

Sec. [23.65.1701(a) General.... Any such person who fails to comply with any such order [or the building official or the Board] is guilty of a *misdemeanor.*

....

(c) Failure to Commence Work. Whenever the required repair or demolition is not commenced within 30 days after any final notice and order issued under this code become effective:

1. *The building official shall cause the building described in such notice and order to be vacated....*

*Id.* (Emphasis added).

5. A notice and order rendered under Anchorage Municipal Code 23.65.401(b) may be appealed under Anchorage Municipal Code 23.65 Chapter 5.

6. Webster's New International Dictionary, Unabridged (2d ed. 1960) also equates the terms "rot" and "decay."

without a difference. Alaska National recognizes that "decay" and "rot" are synonymous terms and concedes that the condition of the Whispering Creek complex was caused by rot. The policy covers collapse caused by "hidden decay." The policy therefore covers collapse caused by rot.

## III. ATTORNEY'S FEES

■ Attorney's fees may be awarded to the prevailing party under Rule 82 of the Alaska Rules of Civil Procedure.[7] An award of attorney's fees under Civil Rule 82 is within the discretion of the trial court and will not be reversed unless manifestly unreasonable, arbitrary, or designed for a purpose other than justly deserved compensation. *Fairbanks Builders v. Sandstrom Plumbing & Heating*, 555 P.2d 964, 966–67 (Alaska 1976).

In the instant case the superior court, without explanation, awarded $4,000.00 of the $4,958.50 that Alaska National claimed in its motion for attorney's fees. Because we reverse the court's award of summary judgment, Alaska National is no longer the prevailing party and is not entitled to attorney's fees.

## IV. CONCLUSION

When the condition of a building is such that its basic structure or its substantial integrity is materially impaired, it can no longer perform its function, and it is in immediate danger of complete collapse, the building is in a state of collapse within the meaning of the collapse provisions of this insurance policy. When, as here, such collapse is caused by a condition covered by the policy, the insurer is liable to the insured for the collapse of the building.

REVERSED and REMANDED for further proceedings consistent with this opinion.

---

7. Alaska Rule of Civil Procedure 82 states in part: "Should no recovery be had, attorney's fees may be fixed by the court in its discretion in a reasonable amount."