## EX PARTE LA PRADE.

No. 21, Original. Argued April 17, 18, 1933.—Decided May 22, 1933.

*Mr. Donald R. Richberg* for petitioner.

*Messrs. Robert Brennan* and *Henley C. Booth,* with whom *Messrs. Homer W. Davis, Guy V. Shoup,* and *E. E. McInnis* were on the brief, for respondents.

Mr. Justice Butler delivered the opinion of the Court.

Arthur T. La Prade, Attorney General of Arizona, applied for leave to file a tendered petition for writ of mandamus requiring Circuit Judge Wilbur and two district judges, constituting a United States district court in that State, to dismiss as to petitioner two suits in equity to which the court, against his opposition, had made him a

party defendant in substitution for his predecessor in office. We directed the judges to show cause why the leave prayed should not be granted, assigned the case for argument, directed briefs to be filed on or before the day set, stayed proceedings against petitioner, and directed the district court to continue its term pending the final determination of petitioner's application. The judges made their return to the rule. On the appointed day, there being no material controversy as to controlling facts, we heard oral arguments upon the merits.

The Act of the Arizona legislature approved by the governor, May 16, 1912, and on referendum by a majority of the voters of the State, November 5, 1912, being § 647, Revised Code, 1928, declares that it shall be unlawful for any company operating a railroad in that State to run over its line any train consisting of more than 70 freight or other cars exclusive of caboose, or any passenger train of more than 14 cars, and provides that any company that shall willfully violate any of the provisions of the Act shall be liable to the State for a penalty of not less than $100 nor more than $1,000 for each offense, and that such penalty shall be recovered, and suits therefor brought, by the attorney general in the name of the State.

July 24, 1929, the Atchison, Topeka and Santa Fe Railway Company and the Southern Pacific Company, respectively, brought suits in the federal court above referred to against K. Berry Peterson, then attorney general of the State. By its complaint each of the plaintiffs shows that it operates a line of railroad and trains for interstate transportation in and through Arizona; sets forth facts on which it claims that enforcement of the statute against it would violate the commerce clause, the due process clause of the Fourteenth Amendment, various provisions of the Interstate Commerce Act and other laws of the United States regulating interstate transportation by railroad; alleges that, if plaintiff shall operate trains con-

sisting of more than the specified number of cars, the defendant unless enjoined will institute numerous prosecutions for recovery of the prescribed penalties; asserts that the damage and injury which it daily sustains by reason of the statute is great and irreparable, and prays that defendant be temporarily and permanently enjoined.

In each case defendant answered and moved to dismiss the bill on the ground that the suit was one against the State prohibited by the Eleventh Amendment. The court consolidated the cases, refused temporary injunctions and denied defendant's motions to dismiss. 43 F. (2d) 198. It then appointed a master, who heard and reported the evidence together with his findings of fact, conclusions of law and recommendations for decrees in favor of plaintiffs. Defendant filed exceptions to, and moved to suppress, the report. The parties filed their briefs; and the court, in accordance with their stipulation, set down the causes for hearing at San Francisco on February 8, 1933. In the meantime, January 3, 1933, defendant's term of office expired and the petitioner, La Prade, then became the attorney general of the State. January 30, the plaintiffs delivered to petitioner a copy of an application to the court for an order substituting him as party defendant and gave notice that the application would be presented to the court at the time and place so fixed.

The applications for substitution were made under 28 U. S. C., § 780.* It provides that, where a suit brought

---

*(a) Where, during the pendency of an action, suit, or other proceeding brought by or against an officer of the United States, or of the District of Columbia, or the Canal Zone, or of a Territory or an insular possession of the United States, or of a county, city, or other governmental agency of such Territory or insular possession, and relating to the present or future discharge of his official duties, such officer dies, resigns, or otherwise ceases to hold such office, it shall be competent for the court wherein the action, suit, or proceeding is

by or against a state officer is pending in a federal court at the time of his separation from his office, the court may permit the cause to be continued and maintained by or against such officer's successor if within six months it be satisfactorily shown that there is a substantial need for so continuing and maintaining the cause and obtaining an adjudication of the questions involved. The section requires that the officer, unless expressly consenting thereto, be given reasonable notice of the application and an opportunity to present any objection which he may have. As grounds for the substitution, plaintiffs' application merely stated that each suit relates to the future discharge of the official duties of the Attorney General of Arizona and, following the language of the statute, that there is a substantial need for continuing and maintaining it and obtaining adjudication of the questions involved.

Plaintiffs, at the appointed time and place, applied to the court for the order of substitution. The petitioner appeared specially and objected. He insisted that, each of the suits being against his predecessor individually, the questions involved became moot upon the expiration of the latter's term of office; that, there being no pleading

pending, whether the court be one of first instance or an appellate tribunal, to permit the cause to be continued and maintained by or against the successor in office of such officer, if within six months after his death or separation from the office it be satisfactorily shown to the court that there is a substantial need for so continuing and maintaining the cause and obtaining an adjudication of the questions involved.

(b) Similar proceedings may be had and taken where an action, suit, or proceeding brought by or against an officer of a State, or of a county, city, or other governmental agency of a State, is pending in a court of the United States at the time of the officer's death or separation from the office.

(c) Before a substitution under this section is made, the party or officer to be affected, unless expressly consenting thereto, must be given reasonable notice of the application therefor and accorded an opportunity to present any objection which he may have.

charging him with having threatened to enforce the state enactment, there was no cause of action against him; that he could not be held for the costs theretofore incurred, and that the suits should be dismissed. After hearing the parties, the court by an order merely containing a recital in the general words of the statute as to the need for continuing the suits, made the petitioner defendant in each case.

Promptly, upon somewhat amplified grounds, he filed a motion that the cases be dismissed. The court denied the motion. Petitioner and his counsel declined to participate in further proceedings in the case. The court heard plantiffs orally and, March 8, 1933, filed its opinion, findings of fact and conclusions of law, and entered decrees adjudging the statute unconstitutional and enjoining petitioner. It declared that no costs up to and including the entry of the final decree should be assessed against petitioner or his predecessor. The opinion, 2 F. Supp. 855, construes the statute to impose the duty of enforcement upon each succeeding attorney general and declares that, as long as there is an attorney general in the State, the threat of prosecution is always present and the resulting injury, if any, always impends.

The injunctions sought are not aimed at the State or the office of attorney general or to restrain exertion of any authority that belongs to either. Each complaint charges that, because of a void enactment and the purpose of defendant under color of his office to enforce it by means of suits which it purports to authorize, plaintiff is prevented from operating trains that are of suitable size and necessary for the proper conduct of the transportation business, and so continuously suffers great and irreparable injury. The suits were brought against defendant, not as a representative of the State, but to restrain him individually from, as it is alleged, wrongfully subjecting plaintiff to such unauthorized prosecutions. In *Ex parte*

*Young,* 209 U.S. 123, the court said (p. 159): "The Act to be enforced is alleged to be unconstitutional, and if it be so, the use of the name of the State to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of and one which does not affect the State in its sovereign or governmental capacity. It is simply an illegal act upon the part of a state official in attempting by the use of the name of the State to enforce a legislative enactment which is void because unconstitutional. If the act which the state Attorney General seeks to enforce be a violation of the Federal Constitution, the officer in proceeding under such enactment comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." The principle there stated has since been applied in numerous decisions here. See e.g., *Hopkins* v. *Clemson College,* 221 U.S. 636, 642 *et seq.* *Truax* v. *Raich,* 239 U.S. 33, 37. *Terrace* v. *Thompson,* 263 U.S. 197, 214. *Sterling* v. *Constantin,* 287 U.S. 378, 393.

The laws of Arizona do not authorize substitution of petitioner for his predecessor. See *Irwin* v. *Wright,* 258 U.S. 219, 222. The suits abated when defendant Peterson ceased to be attorney general. And unless empowered by § 780, the district court is without jurisdiction to direct that petitioner be substituted and that the suits be continued and maintained against him. *United States ex rel. Bernardin* v. *Butterworth,* 169 U.S. 600, 605. *Shaffer* v. *Howard,* 249 U.S. 200, 201. *Gorham Mfg. Co.* v. *Wendell,* 261 U.S. 1.

Subdivision (a) of § 780 applies only to proceedings brought by or against officers of the United States or those holding office directly or mediately under the authority of Congress. It is derived from the Act of February 13, 1925, c. 229, § 11 (a), 43 Stat. 941. It enlarges the Act

of February 8, 1899, c. 121, 30 Stat. 822, which was passed after our decision in *United States ex rel. Bernardin* v. *Butterworth, supra.* It was there held that a suit to compel the Commissioner of Patents to issue a patent abated by the death of the Commissioner and could not be revived so as to bring in his successor even upon consent of the latter. At the conclusion of its opinion the court said (p. 605): " In view of the inconvenience, of which the present case is a striking instance, occasioned by this state of the law, it would seem desirable that Congress should provide for the difficulty by enacting that, in the case of suits against the heads of departments abating by death or resignation, it should be lawful for the successor in office to be brought into the case by petition, or some other appropriate method."

Subdivision (b) applies only to proceedings brought by or against those holding office under state authority. As to such, it authorizes " similar proceedings " to those specified in subdivision (a). It was passed after our decision in *Irwin* v. *Wright, supra.* The opinion shows (p. 222) that a suit to enjoin a public officer from enforcing a statute is personal and, in the absence of statutory provision for continuing it against his successor, abates upon his death or retirement from office. The court held that the Act of February 8, 1899, did not authorize the substitution of a county treasurer for his predecessor in a suit against the latter to enjoin collection of taxes. We suggested that it would promote justice if Congress were to enlarge the scope of that Act so as to authorize substitution in suits by or against state officers and said: " Under the present state of the law, an important litigation may be begun and carried through to this court after much effort and expense, only to end in dismissal because, in the necessary time consumed in reaching here, state officials, parties to the action, have retired from office. It is a defect which only legislation can cure."

Subdivision (c) extends to all cases covered by (a) and (b). It merely requires that before substitution a non-consenting officer shall be given notice and opportunity to object. It does not prescribe the showing of facts necessary to warrant an order that the proceeding be continued by or against the successor. When construing the section, it is to be borne in mind that Congress has authority to direct the conduct of federal officers in proceedings brought by or against them as such and may ordain that they may sue or be sued as representatives of the United States and stand in judgment on its behalf (*I.C.C. v. Oregon-Washington R. & N. Co.*, 288 U.S. 14, 27); but that Congress is not so empowered as to state officers. The section is merely permissive; it does not require but merely authorizes the court to order substitution in the cases covered. It extends only to suits " relating to the present or future discharge of . . . official duties." At least as to state officers it does not purport to authorize the imposition of liability or restraint upon the successor on account of anything done or threatened by the predecessor individually.

As shown above, the purpose of the suits was to prevent a wrong about to be committed by defendant acting outside, and in abuse of the powers of, his office. The wrongs threatened or committed by him constitute no ground for injunction against petitioner. Plaintiffs did not allege that petitioner threatened or intended to do anything for the enforcement of the statute. The mere declaration of the statute that suits for recovery of penalties shall be brought by the attorney general is not sufficient. Petitioner might hold, as plaintiffs maintain, that the statute is unconstitutional and that, having regard to his official oath, he rightly may refrain from effort to enforce it. United States Constitution, Art. VI, cl. 3. Arizona Revised Code, 1928, § 63. The statement of Chief Justice Taft writing for the Court in *Gorham Mfg. Co.* v. *Wendell*,

*supra,* is pertinent. He said (p. 4): " The inherent diffi-
culty in all these cases is not in the liability and suability
of the successor in a new suit. It is in the shifting from
the personal liability of the first officer for threatened
wrong or abuse of his office to the personal liability of his
successor when there is no privity between them, as there
is not if the officer sued is injuring or is threatening to in-
jure the complainant, without lawful official authority.
There is no legal relation between the wrong committed
or about to be committed by the one, and that by the
other."

It follows from what has been said that § 780 has no ap-
plication to the case as presented and that the district
court had no jurisdiction to substitute petitioner as a
party defendant in place of his predecessor or to direct
that the suits be continued and maintained against him.
We have no occasion to decide whether or in what circum-
stances a successor in office who adopts the attitude of his
predecessor and is proceeding or threatening to proceed
to enforce the statute may be substituted in a pending
suit. That question is not here and is reserved.

Petitioner's application for leave to file is granted, the
case will be docketed and respondents' return filed, and
a writ of mandamus will issue commanding the respond-
ents to vacate the decrees against petitioner and to dismiss
the suits as to him.

*It is so ordered.*