## SOUTHERN PAC. CO. v. CONWAY.
### No. 9474.

Circuit Court of Appeals, Ninth Circuit.
Nov. 15, 1940.

Alexander B. Baker and Louis B. Whitney, both of Phoenix, Ariz., and C. W. Durbrow, Henly C. Booth, and Burton Mason, all of San Francisco, Cal., for appellant.

Charles L. Strouss and W. E. Polley, both of Phoenix, Ariz., for appellee.

Before WILBUR, DENMAN, and STEPHENS, Circuit Judges.

WILBUR, Circuit Judge.

On April 18, 1939, appellant filed a complaint in the United States District Court for Arizona against Joe Conway, individually, seeking a declaratory judgment against appellee, who is alleged to be the Attorney General of the State of Arizona, to the effect that the Arizona Train Limit Law, approved by the people by referendum after enactment by its legislature (Arizona Revised Code, 1928, Section 647), is unconstitutional because it violates the Commerce Clause (cl. 3, sec. 8, Art. I) of, and the Due Process Clause of the Fourteenth Amendment to, the Constitution of the United States. These same claims were advanced in prior litigation on the subject in Atchison, T. & S. F. Ry. Co. v. La Prade (Southern Pac. Co. v. La Prade), D.C., 2 F.Supp. 855; see, also, Ex parte La Prade, 289 U.S. 444, 53 S.Ct. 682, 77 L.Ed. 1311.

The complaint alleged that the defendant " * * * claims and maintains that said train-limit law is valid and constitutional in all respects and is applicable to and binding upon plaintiff in its railroad operations in Arizona; and said defendant further claims and maintains that, in the event of violation of said law by plaintiff, it is and will be his duty forthwith to institute or direct the institution of proceedings to recover from plaintiff the penalties provided in said law and otherwise to enforce compliance therewith by plaintiff."

To support the charge of unconstitutionality the complaint contained many allegations as to the effect of limiting the length of its trains, unneccessary to set out here. It alleged, among other things, that enforcement of the act would cause appellant a loss of not less than $300,000 per year and that the penalties for its violation were so heavy that if the act were disobeyed appellant would be liable to penalties varying from $1,600 to $37,000 per day, depending upon the density of traffic.

The defendant alleged that he had formed no opinion or belief and makes no contention either as to the validity, constitutionality or unconstitutionality of said Arizona Train Limit Law, or as to his duties thereunder and that no occasion had arisen for the defendant in his official capacity to investigate the constitutionality of the Arizona Train Limit Law because there had been no report or information of a violation thereof.

In his answer appellee specifically denied that he claimed or maintained that it was or would be his duty, as Attorney General or otherwise, to prosecute or sue plaintiff for each or for any violation of the Arizona Train Limit Law, supra, as alleged in the complaint. At the pre-trial conference appellee's counsel admitted all the allegations of the complaint upon which the claim of unconstitutionality is based, but denied that appellee would be under any duty to enforce the act unless it is constitutional. The amended order following the pre-trial conference was to the same effect.

On the trial appellant introduced its evidence, but defendant offered no evidence and moved to dismiss for lack of jurisdiction. The court made findings of fact bearing on the question of constitutionality in accordance with the plaintiff's evidence and the admitted facts, but also found that appellee had not threatened to enforce the Arizona Train Limit Law, supra, and had taken no action toward enforcing it. The court also found that no case or controversy was presented within the judicial power of United States courts and on February 14, 1940, dismissed the proceedings for want of jurisdiction.

An appeal from the judgment of dismissal was taken to this court. Pending the appeal appellant presented to this court its motion that the case be remanded to the trial court so as to permit a supplemental complaint to be filed and evidence presented in support thereof. In support of this motion appellant showed by affidavits that on April 19, 1940, appellee, acting as Attorney General, had brought suit in the Superior Court of the State of Arizona, against appellant as the defendant, charging it with two violations of the Train Limit Law and seeking to recover the statutory penalties; also that on the same day appellee had issued a public statement announcing his belief in the validity of the law and his intention, if successful in the prosecution there commenced, to sue the appellant for penalties with respect to every other violation which it might have committed and specifying that such penalties might amount to $100,000 or more.

After hearing argument on appellant's motion to remand this court on June 19, 1940, entered its order denying said motion "without prejudice to the right to renew

such motion at the time the appeal is heard on the merits."

Appellant's opening brief in support of its appeal renews its motion to remand, urging that the same be further considered and granted in the event that this court is not convinced, upon the record before it, that the judgment of the trial court was erroneous and should be reversed.

## Was the Judgment of Dismissal Erroneous?

The District Court held that it had no jurisdiction to enter a declaratory judgment upon the facts before it because there was no case or controversy between the parties.

■ The fact that the basic question was the constitutionality of a statute did not render a declaratory judgment improper. Freeman on Judgments, 5th ed. § 1356; Zoercher v. Agler, 202 Ind. 214, 172 N.E. 186, 907, 70 A.L.R. 1232; Adams v. Slavin, 225 Ky. 135, 7 S.W.2d 836; Department of Agriculture v. Laux, 223 Wis. 287, 270 N.W. 548; Penn v. Glenn, D.C., 10 F.Supp. 483; Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379; 83 L.Ed. 441.

■ The court's jurisdiction depends upon the existence of a justiciable controversy. In the first place such a controversy is essential to the jurisdiction of any federal court whatever the nature of the relief sought. Muskrat v. United States, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246; Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688. In the second place the Declaratory Judgment Act, 28 U.S.C.A. § 400, specifically requires that an "actual controversy" be present. On the other hand, a sufficient controversy is present when a defendant, acting under color of authority, seeks to enforce an act which the plaintiff seeks to prevent on the ground that the statute is unconstitutional and would, if enforced against the plaintiff, work irreparable injury. Upon that basis the Supreme Court has sustained injunctions granted by District Courts in numerous cases. Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.,N.S., 932, 14 Ann.Cas. 764; Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070, 39 A.L.R. 468; Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111.

■ Appellee contends that he is without any interest as an individual in the enforcement of the Train Limit Law and that if he is interested at all it is in his capacity as Attorney General of the State of Arizona, in which capacity he is protected from this suit by the Eleventh Amendment to the Constitution of the United States. That contention rests upon the theory that a suit against him as Attorney General in effect would be a suit against the state; but a long series of Supreme Court decisions has held that no official can be under a duty to enforce a law that violates the United States Constitution, that in attempting to do so he is not fulfilling an official duty or acting for the state, and if a showing of irreparable injury is made may be enjoined from enforcing such an act. Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.,N.S., 932, 14 Ann.Cas. 764; Ex parte La Prade, 289 U.S. 444, 53 S.Ct. 682, 77 L.Ed. 1311; Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131, L.R.A.1916D, 545, Ann.Cas.1917B, 283.

■ Furthermore, when a threat is made or an intention expressed by such an officer to enforce a law alleged to be unconstitutional he may be sued as an individual for a judgment declaring the act to be unconstitutional in a federal court. Cf. Ex Parte Young, supra; Currin v. Wallace, supra.

However, it must be remembered that before the officer, in this case the Attorney General of Arizona, can be proceeded against as an individual there must be some basis for treating him as a threatened wrong-doer. The appellant company labors to establish that basis. In doing so it relies upon two propositions. One is that an officer is presumed to do his duty. The other is that it is the duty of the Attorney General to enforce the laws of Arizona unless determined by a court with appropriate jurisdiction to be unconstitutional.

■ As to the asserted presumption, this may be said: It surely cannot overcome the express declaration of the appellee that he would not attempt to enforce the law until he formed an opinion that it was constitutional.

■ As to the contention that it was the duty of the Attorney General to endeavor to enforce the law of his state, leaving it to the courts to pass upon the question of constitutionality, it is sufficient to observe that the position repeatedly and persistently taken by the Supreme Court is

that it cannot be the duty of a public prosecutor to endeavor to enforce a law that violates the Constitution of the United States. It is clear from the decision of the Supreme Court in Ex parte La Prade, 289 U.S. 444, 53 S.Ct. 682, 77 L.Ed. 1311, supra, that the question turns upon the threats or acts of the officer rather than from any duty supposed to rest upon him by reason of such unconstitutional act.

Appellant also attempts to show the presence of a substantial controversy by the record of the pre-trial conference held on November 3, 1939. On December 1, 1939, the trial court entered an order which in effect recited that appellee had admitted the following allegation in the complaint:

"Said defendant claims and maintains that it is and will be his duty, as Attorney General, to prosecute and sue plaintiff for each and every violation of said act which it may commit."

But, on December 12, 1939, the court on motion amended said order by striking out so much thereof as recited the admission of said allegation.

■ Appellant contends that the amended order was erroneous and contrary to the record of the pre-trial conference. An examination of that record as it appears in the transcript fails to support appellant's contention.

■ Whatever may have occurred subsequent to the judgment from which their appeal was taken, the record up to that point supports the finding of the trial court that no controversy as yet existed when the action was begun. The trial court did not err in its judgment of dismissal.

### The Motion to Remand.

Plaintiff seeks to have the case remanded for the purpose of allowing a supplementary complaint to be filed setting forth occurrences subsequent to the trial and judgment.

■ If the occurrences relied upon are sufficient for a supplementary complaint it is no objection to the procedure here adopted that judgment has been entered and an appeal taken. Ballard v. Searls, 130 U.S. 50, 9 S.Ct. 418, 32 L.Ed. 846.

One of the occurrences relied upon is the institution of proceedings in the Superior Court of Arizona by defendant as Attorney General whereby complaint is made and a penalty of $2,000 sought in each of two separate counts against the plaintiff, one for violating the Train Limit Law with respect to freight trains and the other for violating the same law with respect to passenger trains.

Another occurrence, according to deposition of one Baker, which was filed in support of the motion to remand, is that, since this suit in the Superior Court was instituted, appellee Conway has in substance said that if he is successful in the state action started he will later institute proceedings to collect fines for "all" violations of the act "both prior and subsequent to the filing of this suit."

■ If appellant were now seeking a declaratory judgment, beginning anew, the pendency of the suit in the state court and the threat evidenced by Baker's deposition, would support the conclusion that a justiciable controversy was present, such as to support an action for a declaratory judgment; but it does not follow that these occurrences subsequent to the judgment may properly be presented by a supplemental complaint. Appellant assumes that since they would have been admissible as evidence had they occurred before the trial they are therefore appropriate facts to be presented by a supplemental complaint. But the office of a pleading is to state ultimate facts and not evidence of such facts. Green v. Palmer, 15 Cal. 411, 76 Am.Dec. 492; McAllister v. Kuhn, 96 U.S. 87, 24 L.Ed. 615; Sierocinski v. E. I. Du Pont de Nemours & Co., 3 Cir., 103 F.2d 843. And this is as true of supplementary as of regular pleadings. Lyster v. Stickney, C. C., 12 F. 609. The office of a supplemental complaint is not to set forth newly discovered evidence justifying a new trial. It is rather "to bring into the record new facts which will enlarge or change the kind of relief to which the plaintiff is entitled." 21 Enc. Pl. & Pr. 19; 49 Corp. Jur. 571; Clark, Code Pleading, 523; Foote v. Burlington Gas Light Co., 103 Iowa 576, 72 N.W. 755; Muncie, etc., Traction Co. v. Citizens' Gas Co., 179 Ind. 322, 327, 100 N.E. 65; Jacob v. Lorenz, 98 Cal. 332, 33 P. 119; Wade v. Gould, 8 Okl. 690, 59 P. 11; Minerals Separation v. Miami Copper Co., D.C., 264 F. 528.

■ The facts sought to be set forth in the proposed supplemental complaint would authorize no further or different relief from that sought in the complaint. At most they would serve merely as evidence tending to show that plaintiff, at the

time the complaint was filed, was entitled to maintain an action for a declaratory judgment, the very relief there sought. Moreover these matters which plaintiff desires to incorporate in its supplemental complaint would be of very little value in determining the state of the defendant's mind at some date prior to any affirmative action on his part. And a justiciable controversy could not arise from an undisclosed state of mind.

The judgment of the District Court does not prevent a new action based upon the subsequent acts and asserted threats of the defendant and it should be affirmed. The motion to remand is denied.

Judgment affirmed.