MICHAEL DALY HAWKINS, Circuit Judge, with whom Judges SCHROEDER, CANBY, THOMAS, and PAEZ, Circuit Judges,
join, dissenting:

A Flawed Procedure

I agree with my colleagues in the majority that United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953), is a rule of evidence, requiring courts to undertake a careful review of evidence that might support a claim or defense to determine whether either could be made without resort to legitimate state secrets. I part company concerning when and where that review should take place.
The majority dismisses the case in its entirety before Jeppesen has even filed an answer to Plaintiffs’ complaint. Outside of the narrow Totten context, the state secrets privilege has never applied to prevent parties from litigating the truth or falsity of allegations, or facts, or information simply because the government regards the truth or falsity of the allegations to be secret. Within the Reynolds framework, dismissal is justified if and only if specific privileged evidence is itself indispensable to establishing either the truth of the plaintiffs’ allegations or a valid defense that would otherwise be available to the defendant. See, e.g., Kasza v. Browner, 133 F.3d 1159, 1166 (9th Cir.1998).
This is important, because an approach that focuses on specific evidence after issues are joined has the benefit of confining the operation of the state secrets doctrine so that it will sweep no more broadly than *1094 clearly necessary. The state secrets doctrine is a judicial construct without foundation in the Constitution, yet its application often trumps what we ordinarily consider to be due process of law. This case now presents a classic illustration. Plaintiffs have alleged facts, which must be taken as true for purposes of a motion to dismiss, that any reasonable person would agree to be gross violations of the norms of international law, remediable under the Alien Tort Statute. They have alleged in detail Jeppesen’s complicity or recklessness in participating in these violations. The government intervened, and asserted that the suit would endanger state secrets. The majority opinion here accepts that threshold objection by the government, so Plaintiffs’ attempt to prove their case in court is simply cut off. They are not even allowed to attempt to prove their case by the use of nonsecret evidence in their own hands or in the hands of third parties.
It is true that, judicial construct though it is, the state secrets doctrine has become embedded in our controlling decisional law. Government claims of state secrets therefore must be entertained by the judiciary. But the doctrine is so dangerous as a means of hiding governmental misbehavior under the guise of national security, and so violative of common rights to due process, that courts should confine its application to the narrowest circumstances that still protect the government’s essential secrets.[1] When, as here, the doctrine is successfully invoked at the threshold of litigation, the claims of secret are necessarily broad and hypothetical. The result is a maximum interference with the due processes of the courts, on the most general claims of state secret privilege. It is far better to require the government to make its claims of state secrets with regard to specific items of evidence or groups of such items as their use is sought in the lawsuit. An official certification that evidence is truly a state secret will be more focused if the head of a department must certify that specific evidence sought in the course of litigation is *1095 [1] truly a secret and cannot be revealed without danger to overriding, essential government interests. And when responsive pleading is complete and discovery under way, judgments as to whether secret material is essential to Plaintiffs’ case or Jeppesen’s defense can be made more accurately.
By refusing to examine the voluminous public record materials submitted by Plaintiffs in support of their claims,[2] and by failing to undertake an analysis of Jeppesen’s ability to defend against those claims, the district court forced every judge of the court of appeals to undertake that effort. This was no small undertaking. Materials the government considers top secret had to be moved securely back and forth across the country and made available in a “cone of silence” environment to first the three-judge panel assigned the case and then the twenty-seven active judges of this court to evaluate whether the case merited en banc consideration. This quite literally put the cart before the horse, depriving a reviewing court of a record upon which its traditional review function could be carried out.[3] This is more than a matter of convenience. Making factual determinations is the particular province of trial courts and for sound reason: they are good at it. Not directing the district court to do that work sends exactly the wrong message in the handling of these critical and sensitive cases. Finding remand “unnecessary,” as the majority does here, [Maj. Op. at 1087, n.10], not only rewards district courts for failing to do their job, but ensures that future appeals courts will have to do that job for them.[4]
This is an appeal from a Rule 12 dismissal, which means that the district court was required to assume that the well-pleaded allegations of the complaint are true, and that we “construe the complaint in the light most favorable to the plaintiffs].” Doe v. United States, 419 F.3d 1058, 1062 (9th Cir.2005). The majority minimizes the importance of these requirements by gratuitously attaching “allegedly” to nearly each sentence describing what Plaintiffs say happened to them, and by quickly dismissing the voluminous publicly available evidence supporting those allegations, including that Jeppesen knew what was going on when it arranged flights described by one of its own officials as “torture flights.”[5] Instead, the majority assumes that even if Plaintiffs’ prima facie *1096 case and Jeppesen’s defense did not depend on privileged evidence, dismissal is required “because there is no feasible way to litigate Jeppesen’s alleged liability without creating an unjustifiable risk of divulging state secrets.” [Maj. Op. at 1087]. But Jeppesen has yet to answer or even to otherwise plead, so we have no idea what those defenses or assertions might be. Making assumptions about the contours of future litigation involves mere speculation, and doing so flies straight in the face of long standing principles of Rule 12 law by extending the inquiry to what might be divulged in future litigation.[6]
We should have remanded this matter to district court to do the Reynolds work that should have been done in the first place.
Because of this fundamental defect in the posture of this matter, the remainder of the dissent focuses on the scope of the state secrets privilege rather than its application to speculative facts.
The Totten Bar
While it chooses not to apply it, the majority correctly recites the general interpretation of the non-justiciability bar of Totten v. United States, 92 U.S. 105, 23 L.Ed. 605 (1876).[7] However, its definition of Totten’s scope — applying to “any case in which ‘the very subject matter of the action’ is ‘a matter of state secret’ ” [Maj. Op. at 1078] — and the concurrence’s full-blown embrace of its application here merit response.
Courts have applied the Totten bar in one of two scenarios: (1) The plaintiff is party to a secret agreement with the government;[8] or (2) The plaintiff sues to solicit information from the government on a “state secret” matter.[9] See Weinberger v. *1097 Catholic Action of Hawaii/Peace Educ. Project, 454 U.S. 139, 146, 102 S.Ct. 197, 70 L.Ed.2d 298 (1981) (Totten bar applies to suit against the United States Navy for failure to file an environmental impact statement regarding a “nuclear capable” facility where Navy would have to admit or deny proposed storage of nuclear weapons at the facility). More generally, the Tot-ten bar has been applied to suits against the government, and never to a plaintiffs suit against a third-party/non-governmental entity.
Here, the “very subject matter” of this lawsuit is Jeppesen’s involvement in an overseas detention program. Plaintiffs are neither parties to a secret agreement with the government, nor are they attempting, as the result of this lawsuit, to solicit information from the government on a “state secret” matter. Rather, they are attempting to remedy “widespread violations of individual constitutional rights” occurring in a program whose existence has been made public. See Hepting v. AT & T, 439 F.Supp.2d 974, 993 (N.D.Cal.2006).
Totten’s logic simply cannot be stretched to encompass the claims here, as they are brought by third-party plaintiffs against non-government defendant actors for their involvement in tortious activities.[10] Nothing Plaintiffs have done supports a conclusion that their “lips [are] to be for ever sealed respecting” the claim on which they sue, such that filing this lawsuit would in itself defeat recovery. See Totten, 92 U.S. at 106.
Instead of “avoiding] difficult questions about the precise scope of the Totten bar” [Maj. Op. at 1085], the majority ought to have found the Totten bar inapplicable, and rejected the district court’s analysis.[11] Totten cannot and does not apply to Plaintiffs’ claims.
The Reynolds Evidentiary Privilege
The majority correctly describes Reynolds as a rule of evidence, which only the government may assert. [Maj. at 1080-81]. However, Reynolds cannot, as the majority contends, be asserted during the pleading stage to excise entire allegations.
The majority argues that because pleadings can serve as evidence, see Huey v. Honeywell, Inc., 82 F.3d 327, 333 (9th Cir.1996); Lockwood v. Wolf Corp., 629 F.2d 603, 611 (9th Cir.1980), the state secrets privilege “may be asserted at any time, even at the pleading stage.” [Maj. Op. at 1080],
Thus, the majority argues, this court would be incorrect to conclude that neither the Federal Rules nor Reynolds would permit us to dismiss this case at the plead *1098 ings stage on the basis of an evidentiary privilege that must be invoked during discovery or at trial. In the majority’s view, the privilege applies at the pleadings stage in such a manner that permits it to remove from a complaint any allegations where “secret and nonsecret information cannot be separated.” [Maj. Op. at 1082].
Whatever validity there may be to the idea that evidentiary privileges can apply at the pleadings stage, it is wrong to suggest that such an application would permit the removal of entire allegations resulting in out-and-out dismissal of the entire suit. Instead, the state secrets privilege operates at the pleadings stage to except from the implications of Rule 8(b)(6) the refusal to answer certain allegations, not, as the government contends, to permit the government or Jeppesen to avoid filing a responsive pleading at all. [Maj. Op. at 1085-86]. In the Fifth Amendment context, the Fourth Circuit has explained that the privilege against self-incrimination “protects an individual ... from answering specific allegations in a complaint or filing responses to interrogatories in a civil action where the answers” would violate his rights under the privilege. N. River Ins. Co., Inc. v. Stefanou, 831 F.2d 484, 486-87 (4th Cir.1987). Accordingly, “when properly invoked, the fifth amendment privilege against self-incrimination ... can avoid the operation of Rule [8(b)(6) ].” Id. at 487.
But a proper invocation of the privilege does not excuse a defendant from the requirement to file a responsive pleading; the obligation is to answer those allegations that can be answered and to make a specific claim of the privilege as to the rest, so the suit can move forward. Id. (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1280, at 360 (1969)).
According to this rationale, Plaintiffs are correct that the government moving forward may assert the state secrets privilege to prevent Jeppesen from answering any allegations, where the answer would constitute evidence properly protected by the privilege. But, recognizing that the privilege may apply at the pleadings stage to prevent defendants from answering certain allegations vis-a-vis operation of Rule 8(b)(6) does not mean the privilege can be used to remove altogether certain subject matters from a lawsuit. Observing that pleadings may constitute evidence, in other words, does not transform an evidentiary privilege into an immunity doctrine.[12] The *1099 state secrets privilege, as an evidentiary privilege, is relevant not to the sufficiency of the complaint, but only to the sufficiency of evidence available to later substantiate the complaint.
Because the Reynolds privilege, like any other evidentiary privilege, “ ‘extends only to [evidence] and not to facts,’ ” Upjohn Co. v. United States, 449 U.S. 383, 395-96, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (quoting Philadelphia v. Westinghouse Elec. Corp., 205 F.Supp. 830, 831 (E.D.Pa.1962)), it cannot be invoked to prevent a litigant from persuading a jury of the truth or falsity of an allegation by reference to non-privileged evidence, regardless whether privileged evidence might also be probafive of the truth or falsity of the allegation.[13]
Reynolds and Rule 12(b)(6)
The majority claims there is “no feasible way to litigate Jeppesen’s alleged liability without creating an unjustifiable risk of divulging state secrets,”[14] [Maj. Op. at 1087], ignoring well-established principles of civil procedure which, at this stage of the litigation, do not permit the prospective evaluation of hypothetical claims of privilege that the government has yet to raise and the district court has yet to consider.
Our task in reviewing the grant of a Rule 12 motion to dismiss “is necessarily a limited one.” Scheuer v. Rhodes, 416 U.S. *1100 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). We are not to determine whether a particular party will ultimately prevail, but instead only whether the complaint “state[s] a claim upon which relief can be granted,” Fed. R. Civ. Pro. 12(b)(6). If Plaintiffs here have stated a claim on which relief can be granted, they should have an opportunity to present evidence in support of their allegations, without regard for the likelihood of ultimate success. See Scheuer, 416 U.S. at 236, 94 S.Ct. 1683 (a district court acts “prematurely” and “erroneously” when it dismisses a well-pleaded complaint, thereby “precluding] any opportunity for the plaintiffs” to establish their case “by subsequent proof’); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (“[A] well-pleaded complaint may proceed even if it appears ‘that a recovery is very remote and unlikely.’ ” (quoting Scheuer, 416 U.S. at 236, 94 S.Ct. 1683)).
This limited inquiry — a long-standing feature of the Rules of Civil Procedure— serves a sensible judicial purpose. We simply cannot resolve whether the Reynolds evidentiary privilege applies without (1) an actual request for discovery of specific evidence, (2) an explanation from Plaintiffs of their need for the evidence, and (3) a formal invocation of the privilege by the government with respect to that evidence, explaining why it must remain confidential. See Reynolds, 345 U.S. at 8-9, 73 S.Ct. 528 (“the principles which control the application of the privilege” require a “formal claim of privilege” by the government with respect to the challenged evidence); id. at 10-11, 73 S.Ct. 528 (the court must consider the litigants’ “showing of necessity” for the requested evidence in determining whether “the occasion for invoking the privilege is appropriate”). Nor can we determine whether the parties will be able to establish their cases without use of privileged evidence without also knowing what non-privileged evidence they will marshal. See Crater Corp. v. Lucent Techs., Inc., 423 F.3d 1260, 1267-68(Fed.Cir.2005) (“deciding the impact of the government’s assertion of the state secrets privilege” before the record is “adequately developed” puts “the cart before the horse”). Thus neither the Federal Rules nor Reynolds would permit us to dismiss this case for “failure to state a claim upon which relief can be granted,” Fed. R. Civ. Pro. 12(b)(6), on the basis of an evidentiary privilege relevant, not to the sufficiency of the complaint, but only to the sufficiency of evidence available to later substantiate the complaint.[15]
A decision to remand would have the additional benefit of conforming with “the general rule ... that a federal appellate court does not consider an issue not passed on below,” and will allow the district court *1101 to apply Reynolds in the first instance. See Singleton v. Wulff, 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); see also Johnson v. California, 543 U.S. 499, 515, 125 S.Ct. 1141, 160 L.Ed.2d 949 (2005) (citing Consol. Rail Corp. v. Gottshall, 512 U.S. 532, 557-58, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994) (reversing and remanding for the lower court to apply the correct legal standard in the first instance)).
The majority’s analysis here is premature. This court should not determine that there is no feasible way to litigate Jeppesen’s liability without disclosing state secrets; such a determination is the district court’s to make once a responsive pleading has been filed, or discovery requests made. We should remand for the government to assert the privilege with respect to secret evidence, and for the district court to determine what evidence is privileged and whether any such evidence is indispensable either to Plaintiffs’ prima facie case or to a valid defense otherwise available to Jeppesen. Only if privileged evidence is indispensable to either party should it dismiss the complaint.

Conclusion

The majority concludes its opinion with a recommendation of alternative remedies. Not only are these remedies insufficient, but their suggestion understates the severity of the consequences to Plaintiffs from the denial of judicial relief. Suggesting, for example, that the Executive could “honor[ ] the fundamental principles of justice” by determining “whether plaintiffs’ claims have merit,” [see Maj. Op. at 1091] disregards the concept of checks and balances. Permitting the executive to police its own errors and determine the remedy dispensed would not only deprive the judiciary of its role, but also deprive Plaintiffs of a fan assessment of their claims by a neutral arbiter. The majority’s suggestion of payment of reparations to the victims of extraordinary rendition, such as those paid to Japanese Latin Americans for the injustices suffered under Internment during World War II, over fifty years after those injustices were suffered [Maj. Op. at 1091], elevates the impractical to the point of absurdity. Similarly, a congressional investigation, private bill, or enacting of “remedial legislation,” [Maj. Op. at 1092], leaves to the legislative branch claims which the federal courts are better equipped to handle. See Kosak v. United States, 465 U.S. 848, 867, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984) (Stevens, J., dissenting).
Arbitrary imprisonment and torture under any circumstance is a “ ‘gross and notorious ... act of despotism.’ ” Hamdi v. Rumsfeld, 542 U.S. 507, 556, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004) (Scalia, J., dissenting) (quoting 1 Blackstone 131-33 (1765)). But “ ‘confinement [and abuse] of the person, by secretly hurrying him to [prison], where his sufferings are unknown or forgotten; is a less public, a less striking, and therefore a more dangerous engine of arbitrary government.’ ” Id. (Scalia, J., dissenting) (quoting 1 Blackstone 131-33 (1765)) (emphasis added).
I would remand to the district court to determine whether Plaintiffs can establish the prima facie elements of their claims or whether Jeppesen could defend against those claims without resort to state secrets evidence.
*1102 APPENDIX
[[Image here]]
*1103 [[Image here]]
*1104 [[Image here]]
*1105 [[Image here]]
*1106 [[Image here]]
*1107 [[Image here]]
*1108 [[Image here]]
*1109 [[Image here]]
*1110 [[Image here]]
*1111 [[Image here]]
*1112 [[Image here]]
*1113 [[Image here]]
*1114 [[Image here]]
*1115 [[Image here]]
*1116 [[Image here]]
*1117 [[Image here]]
*1118 [[Image here]]
*1119 [[Image here]]
*1120 [[Image here]]
*1121 [[Image here]]
*1122 [[Image here]]
*1123 [[Image here]]
*1124 [[Image here]]
*1125 [[Image here]]
*1126 [[Image here]]
*1127 [[Image here]]
*1128 [[Image here]]
*1129 [[Image here]]
*1130 [[Image here]]
*1131 [[Image here]]

. A summary of the some 1,800 pages of that information appears as an Appendix to this dissent.

. In another context, the Supreme Court has pointed out the structural problems created when appellate courts are presented with undeveloped records. Johnson v. Jones, 515 U.S. 304, 309, 316-17, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995).

. I have confidence in the ability of district judges to make such determinations, and in the process of handling information which the government considers secret. Dismissing this suit out of fear of "compelled or inadvertent disclosure” of secret information during the course of litigation, [Maj. Op. at 1086], assumes that the government might make mistakes in what it produces, or that district courts might compel the disclosure of documents legitimately covered by the state secrets privilege.

. According to the sworn declaration of former Jeppesen employee Sean Belcher, the Director of Jeppesen International Trip Planning Services, Bob Overby, told him, " ‘We do all the extraordinary rendition flights,' ” which he also referred to as " 'the torture flights’ ” or "spook flights.” Belcher stated that "there were some employees who were not comfortable with that aspect of Jeppesen's business” because they knew " 'some of these flights end up' ” with the passengers being tortured. He noted that Overby had explained, " 'that’s just the way it is, we're doing them' ” because "the rendition flights paid very well.”

. See 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (3d ed. 2010) (Rule 12(b)(6) inquiries are "essentially ... limited to the content of the complaint”); see also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322-23, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) (listing permissible evidence to consider in a 12(b)(6) motion, with no mention of prospective evidence, and with emphasis on an examination of the "underlying facts”); Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean Geological Formation, 524 F.3d 1090, 1096 (9th Cir.2008) (the court may consider in a 12(b)(6) motion "only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice”) (citing Outdoor Media Grp., Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir.2007)).

. See, e.g., Wilson v.Libby, 535 F.3d 697, 710 (D.C.Cir.2008) (discussing "the justiciability doctrine of Totten v. United States ”); Am. Civil Liberties Union v. Nat’l Sec. Agency, 493 F.3d 644, 650 n. 2 (6th Cir.2007) (the Totten rule is a "rule of non-justiciability”); Al-Haramain Islamic Found., Inc. v. Bush, 507 F.3d 1190, 1197 (9th Cir.2007) (the Totten rule is “a rule of non-justiciability, akin to a political question”).

. Totten itself involved the estate of a former Civil War spy seeking compensation. 92 U.S. 105, 23 L.Ed. 605. See also Tenet v. Doe, 544 U.S. 1, 10, 125 S.Ct. 1230, 161 L.Ed.2d 82 (2005) (suit against CIA director for failure to provide financial compensation for Cold War services).

. This category of Toften-bar cases is distinct from those involving a plaintiff's attempt to solicit information from the government via the Freedom of Information Act (FOIA). Weinberger, which has a FOIA element, was decided on FOIA grounds and Totten grounds, and relevant here is the Totten-related decision. See Weinberger v. Catholic Action of Hawaii/Peace Educ. Project, 454 U.S. 139, 146, 102 S.Ct. 197, 70 L.Ed.2d 298 (1981). The FOIA cases are easily distinguishable. The FOIA cases entail litigation for the sole and independent purpose of obtaining disclosure of classified information. See 5 U.S.C. § 552(a)(4)(B); see also, e.g., Alfred A. Knopf, Inc. v. Colby, 509 F.2d 1362, 1370 (4th Cir. 1975) (addressing the court’s authority under FOIA to order the disclosure of classified information for publication in a book). While *1097 "an informed citizenry [is] vital to the functioning of a democratic society,” Dep’t of Interior v. Klamath Water Users Protective Ass’n, 532 U.S. 1, 16, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001) (internal quotations omitted), the balance of interests will more often lilt in favor of the Executive when disclosure is the primary end in and of itself. FOIA therefore predictably entails greater deference to the national classification system than does the state secrets doctrine.

. See Terkel v. AT & T Corp., 441 F.Supp.2d 899, 907 (N.D.Ill.2006) (refusing to apply Tot-ten because "the plaintiffs in this case were not parties to the alleged contract nor did they agree to its terms; rather, they claim that the performance of an alleged contract entered into by others would violate their statutory rights”); Am. Civil Liberties Union v. Nat'l Sec. Agency, 438 F.Supp.2d 754, 763 (E.D.Mich.2006) (refusing to apply Totten because it "applies [only] to actions where there is a secret espionage relationship between the Plaintiff and the Government”), vacated on other grounds, 493 F.3d 644 (6th Cir.2007).

. Nor can the choice to affirm the district court under Reynolds be justified as an affirmance on “any basis supported by the record.” [Maj. Op. at 1085], The result the majority seeks here, a dismissal of Plaintiffs' case in its entirety, is not supported by the case law.

. It is not at all clear that the Reynolds privilege can be asserted at the pleading stage, as the majority claims. [See Maj. Op. at 1080-81]. Ellsberg v.Mitchell, 709 F.2d 51, 52 (D.C.Cir.1983), on which the majority relies, involved the formal claim of state secrets privilege entered by the United States in opposition to the plaintiffs’ motion to compel discovery and, while the opinion references the government's amended answer to tire complaint in a footnote, it focuses centrally on the refusal of the defendants "to respond to any of the plaintiffs’ remaining allegations or questions” as presented in the plaintiffs' submitted interrogatories. Id. at 53-54 & n.6. In Black v. United States, 62 F.3d 1115, 1117 (8th Cir.1995), on which the majority also relies, the Eighth Circuit dismissed a suit against the CIA by an electrical engineer with government security clearances at the pleading stage because the main information Black sought in his complaint, which would "confirm or deny Black's alleged contacts with government officers,” was the basis of Black's claim. Without it, his suit could not go forward. Here, where Plaintiffs arguably have ample public information to proceed with their suit, we do not have such a cut-and-dried case of privilege. [See Dissent App'x],
Moreover, pleadings are not considered evidence. See United States v. Zermeno, 66 F.3d 1058, 1062 (9th Cir.1995) ("The government's assertions in its pleadings are not evidence.”); S. Pac. Co. v. Conway, 115 F.2d 746, 750 (9th Cir.1940) ("[T]he office of a pleading is to state ultimate facts and not evidence of such facts.”). If the government is seeking to excise entire allegations with the invocation of the privilege at the pleading stage, such an *1099 invocation would require an assertion that the very subject matter of the lawsuit is a state secret, and not the assertion of an evidentiary privilege. See Molerio v. FBI, 749 F.2d 815, 821 (D.C.Cir.1984) (where "the whole object of the suit and of the discovery is to establish a fact that is a state secret,” compliance with discovery as a whole can be "excused in gross, without the necessity of examining individual documents”); cf. Al-Haramain, 507 F.3d at 1197 (applying Reynolds directly to evidence — a sealed document — where privilege was asserted in response to government’s accidental disclosure of documents to the plaintiffs, and declining to find "the very subject matter” of the suit to be a state secret). Here, while the majority declines to reach the Totten bar question, the "very subject matter” of this lawsuit — Jeppesen’s involvement in an overseas detention program — has been publicly acknowledged and is not a state secret.

. Contrary to the majority’s assertion, the Reynolds privilege cannot be asserted prospectively, without an examination of the evidence on an item-by-item basis. To conclude that Reynolds, like Totten, applies to prevent the litigation of allegations, rather than simply discovery of evidence, would be to erode the distinction between the two versions of the doctrine. Moreover, the Eighth Circuit case on which the majority relies, Black, 62 F.3d at 1117, was ultimately not a prospective assertion of the Reynolds privilege. While the government asserted the privilege in response to the plaintiffs amended complaint, ultimately, the privilege was asserted as to one piece of information, without which the plaintiff could not proceed; he could not bring an intentional infliction of emotional distress claim against the CIA without information about any existing contacts with government officers. Id. The information on his contacts, which the plaintiff attempted to solicit via his complaint, was privileged. Id. To say Black permits the assertion of the Reynolds privilege in the pleading stage is to misstate its holding.

. The majority cites El-Masri v. United States, 479 F.3d 296, 308-13 (4th Cir.2007), as a comparable case wherein the court found further litigation risked disclosure of state secrets and threatened grave harm to American national security. [Maj. Op. at 1087, citing El-Masri, 479 F.3d at 312], However, noting that the Fourth Circuit appears to have “merged the concept of 'subject matter’ with the notion of proof of a prima facie case,” this court in Al-Haramain expressly rejected El-Masri's logic. 507 F.3d at 1201. In the Ninth Circuit, "the ‘subject matter’ of a lawsuit [is not necessarily] one and the same [as] the facts necessary to litigate the case.” Id. Accordingly, "[b]ecause the Fourth Circuit has accorded an expansive meaning to the 'subject matter’ of an action, one that we have not adopted, El-Masri does not support dismissal based on the subject matter of the suit.” Id.

. While the government styled its motion below as a "Motion to Dismiss or, in the Alternative, for Summary Judgment,” the district court did not grant summary judgment, but rather dismissal — and it could not have done otherwise. A party is entitled to summary judgment only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact.” Fed. R. Civ. Pro. 56(c). Here, because Jeppesen has not even answered the complaint, it is uncertain which allegations are in dispute, much less which disputes might raise genuine issues of material fact.
The procedural posture of this case thus differs fundamentally from that in Kasza, which involved a grant of summary judgment. See Frost v. Perry, 919 F.Supp. 1459, 1465-67 (D.Nev.1996), aff'd sub nom. Kasza, 133 F.3d 1159 (granting summary judgment because “the privilege, as invoked, covered various items of discovery • requested by Plaintiffs,” including "various photographic exhibits” and "under seal ... affidavits,” and therefore "Plaintiffs have failed to establish a genuine issue as to any material fact without running afoul of the military and state secrets privilege").